NEW YORK,
May, 1816.

WYLIE
v.
HYDE.

## WYLIE *against* HYDE AND HYDE.

IN ERROR, on *certiorari* to a justice's court.

This was an action of trover for a sleigh, brought by the defendant in error against the plaintiffs in error. The jury in the court below found a special verdict, which stated, that, on the 6th of *August*, 1813, the plaintiffs below recovered judgment before a justice of the peace, against *Samuel Burnam*, for 23 dollars and 60 cents : that, on the 6th of *September*, 1813, execution was issued thereon, and delivered to a constable, who, on the 23d of *September*, levied on a sleigh, the property of *Burnam*, and the same day advertised it to be sold on the 29th of *September* then instant, at which day it was sold at public vendue to the plaintiffs below, but no endorsement was made on the execution of the time of such levy : that, on the 13th of *September*, 1813, one *Lynch* recovered a judgment before the same justice, against *Burnam*, for 16 dollars and 31 cents ; and that an execution was issued thereon, and delivered to another constable, by consent of *Burnam*, who made a levy on the same day on the before-mentioned sleigh, and endorsed the levy on his execution on that day, and on the 2d of *October* gave notice that the sleigh would be sold on the 9th of that month, when it was, accordingly, sold, at public vendue, to *Wylie*, the defendant below : that notice of the prior levy was given by the second constable to the constable who had the first execution, before his levy was made, and he gave such notice to the plaintiffs below, before the sale, who directed him to sell ; and at, and before, the second sale, notice was given by the plaintiffs to the defendant of the prior purchase : that the sleigh was never removed from *Burnam's* barn until after the sale to the defendant below, who then converted it to his own use ; and that the judgments and executions, and the proceedings thereon, were *bona fide*, and without fraud ; and that the value of the sleigh was 25 dollars. On the verdict being presented to the court, the defendant below objected to a special verdict being received ; but the justice overruled the objection, and received the verdict, on which he gave judgment for the plaintiffs below for the value of the sleigh, and costs.

*The jury, in a justice's court, cannot find a special verdict; nor can the justice render any judgment on such verdict.*

*The priority of executions, in a justice's court, depends not on the time of delivering the execution to the constable, but on the time of actual levy.*

*It is sufficient, if a constable levy on an execution, and advertise for sale, within 20 days after he has received the execution, but sells after the expiration of the 20 days, provided the sale were made before the return day of the writ; and such sale will be valid against an intermediate levy and sale on another execution.*

*And the advertisement may be made on a day subsequent to the levy, provided both were within the 20 days.*

YATES, J., delivered the opinion of the court. I am inclined to think that no judgment can be rendered on a special verdict in a justice's court. The act constituting those courts is silent on the subject. The 29th section of the act for regulating trials by issues, and for returning able and sufficient jurors, does not apply to justices' courts. It ordains that no jury, upon any trial thereafter to be had, shall, in any case, be compelled to give a general verdict, so that they find a special verdict, and show the truth of the fact, and require the aid of the court or justices.

By this, as well as the preceding sections of the act, it would appear that the rendering of special verdicts is not extended to inferior tribunals; and, according to the principles laid down in *Day* v. *Wilburn*, (2 *Caines' Rep.* 135,) the privilege not having been specially given by statute to jurors in justices' courts, it cannot be exercised in those courts. That case states, that proceedings under the 10 pound act are to be regulated entirely by that act; and that the act relative to common informers does not apply to such proceedings.

This court have decided that a demurrer to evidence is a proceeding inapplicable to a justice's court, because justices are not, generally, acquainted with the science of law; (3 *Caines' Rep.* 140.) yet, should special verdicts be allowed in such a court, the same legal knowledge would be requisite to enable a justice to render judgment on such verdict, because, in one instance, the facts are admitted by the party, and, in the other, they are found by the jury; and the only question in either case is a question of law, to be determined by the justice. Besides, it might be attended with unavoidable injustice to a party; for a special verdict might be so defective that no judgment could be rendered thereon. In such case the practice of other courts[*] (having the power) is to award a *venire facias de novo*. This a justice cannot do. The party, consequently, would be without a remedy in that cause, and would be obliged to commence a new action: it, therefore, appears to be manifestly unfit and improper that special verdicts should be allowed in justices' courts. But admitting that the special verdict, in this instance, could be received, the judgment rendered on it would be erroneous.

It appears that the constable, under whom the plaintiffs in error claimed, levied on the sleigh the 13th of *September*, and the constable, under whom the defendant in error claimed,

* *Sellon*, 495.

levied on the 23d of *September.* This was sufficient to entitle the plaintiffs in error to recover in the court below, if the subsequent proceedings of the constable were correct. The prior delivery of the execution in favour of the defendant in error could not alter the effect, because the date or time of issuing, or delivery to a constable, of executions, issuing from a justice's court, cannot be material in determining what property is held by it. Each town and city has a number of constables in it, and if such a rule prevailed it would create the greatest confusion. The time of making the levy only can control the right to the property, and that alone can create the lien ; it then, and not before, is properly in custody of the law.

The thirteenth section of the twenty-five dollar act declares, that in case any constable to whom any execution shall be delivered shall not, within twenty days after receiving such execution, levy the same on the goods and chattels of the person against whom such execution shall be granted, and in ten days thereafter pay the debt, he shall be holden to pay the amount of the execution. According to this section, if the constable make the levy, and advertise within 20 days, and sell within the life of the execution, it is sufficient. The execution in favour of the plaintiffs in error was delivered, and the levy made, on the 13th of *September;* the constable advertised on the 2d of *October,* within the 20 days, and sold on the 9th, clearly before the return of the execution ; the proceedings were, therefore, perfectly regular ; and the constable who made the second levy had no right (especially after notice given) to sell the property ; and the above, in part, recited section of the act is explanatory of, and must control, the preceding section of the act, which ordains that the constable, after taking the goods and chattels in his custody by virtue of such execution, shall *immediately* give public notice by advertisement, signed by himself, &c.; it is evident that the term *immediately,* thus used, cannot be so construed as to intend that, because the property first levied had not been immediately advertised, the lien thereby created should be destroyed, and that the second levy should prevail. It is enough if the advertisement is within 20 days, so that the sale may be made at any time before the return of the execution. The judgment must be reversed.

Judgment of reversal.