## EVERETT *vs.* COE.

Where one of the parties to a contract for carrying on a manufacturing business is to furnish the building and the money to defray the expenses, and the other is to superintend the work, and the former is to receive in addition to his disbursements, a share in the profits in proportion to the quantity of goods manufactured, (*e. g.* one cent on each yard of cloth made,) the parties are partners as respects third persons.

But to have this effect the allowance to the party furnishing the means must, by the contract, depend upon profits being made. If he is to be paid at all events the contract does not create a partnership.

MOTION to set aside the report of a sole referee. The action was assumpsit for goods sold and delivered. Plea *non-assumpsit.* The plaintiff was a merchant, and the goods for the sale of which he sought to recover, were delivered by him subsequent to May 1, 1844, on the orders of Marble & Penny, who were manufacturers of cotton goods, at The Farmers' Factory, so called, in the neighborhood of the plaintiff's store. The orders were drawn in favor of operatives and others in payment for services rendered in the business of the factory. The plaintiff sought to charge the defendant as a partner with Marble & Penny in that business; and for that purpose they gave in evidence an agreement in writing, without date, but which was proved to have been executed about the first day of May, 1844, under the hands of Marble & Penny, signing their individual names, and of the defendant. By its terms Marble & Penny agreed to take of the defendant, the Farmers' Factory for the term of one or more years, "should the business prove a source of mutual profit to the parties concerned," upon certain conditions, which were mentioned. The defendant was to furnish the necessary means to enable M. & P. to prosecute the business, viz.: "the advancement of money for the purchase of cotton, for the payment of help, and for all the expenses attending the starting and future operation of the mill for the manufacture of cotton goods." It then proceeded as follows: "We agree to superintend the manufacture of said goods, and to allow said

Everett *v.* Coe.

Coe, [the defendant,] above all expenses incurred in said busi-
ness a *profit* of one cent on the yard for all cloths manufac-
tured by us in said mill, not exceeding 6000 yards per week,
the balance of said profits to be paid to us for services, and the
said Coe is to give us the entire profit arising from the manu-
facture and sale of all goods made by us in said mill exceeding
the 6000 yards per week above mentioned. The goods we
agree to manufacture upon this condition to be sheetings of
such description as may be found for our mutual benefit."
Marble & Penny were to have certain tillable land with the
factory, and to observe certain rules for the security of the prop-
erty against fire. There was also evidence tending to show
that the orders were drawn by the express direction of the defen-
dant, which, as the opinion of the court only referred to the
question of partnership, it is unnecessary to state.

The referee held that the agreement did not constitute a
partnership between the defendant and Marble & Penny, and
that the plaintiff could not recover on the other ground, and
reported in favor of the defendant.

*H. Denio,* for the plaintiff, moved to set aside the report.
He insisted that the money to be paid to the defendant was a
share of the profits as such ; and he said that such an interest
always rendered the party entitled to it a partner. He referred
to *Cushman* v. *Bailey,* (1 *Hill,* 526, *and cases cited ;*) *Collier
on Part.* 44 ; *Chase* v. *Barrett,* (4 *Paige,* 148.) But if there
could be any doubt of this, then Marble & Penny were the
defendant's general agents for carrying on the factory. In
either case they were liable to the plaintiff.

*W. Tracy,* for the defendant, referred to *Story on Part.*
§§ 30 *to* 36, 46 *to* 49.

*By the Court,* BEARDSLEY, Ch. J. That we may be pre-
pared to give a satisfactory answer to the question whether the
defendant was a partner of Marble & Penny, it is first neces-
sary to look at the contract entered into between them in the

Everett *v.* Coe.

spring of 1844, and determine, in one particular, its true sense and meaning. By that contract Marble & Penny agreed to take of the defendant the Farmers' Factory, at Paris, Oneida county, and to run the same on certain terms therein specified. The first of these terms or conditions was that the defendant should furnish the necessary means to enable them to prosecute the business, that is to say "for the purchase of cotton, the payment of help, and for all the expenses attending the starting and future operation of the mill for the manufacture of cotton goods." This was to be done by the defendant. Marble & Penny, on their part, were " to superintend the manufacture of said goods, and to allow said Coe," (the defendant,) " above all expenses incurred in said business, a profit of one cent on the yard for all cloths manufactured," by them, " in said mill, not exceeding 6000 yards per week." The question is here presented, was this " one cent on the yard" to be paid at all events without regard to the profit or loss of the business, or was it only payable out of profits actually made. If the former is what the parties intended and what the contract imports, it was only providing a fluctuating and dubious compensation, instead of a fixed rate of interest for the use of the necessary capital which the defendant was to advance to carry on the business. Such an arrangement, although it might be unequal and oppressive, as it also might serve as a cover for usury, would still not make the parties to it copartners. There would be no common interest in the capital employed, or the profits, if any were made, and indeed, as to one of the parties no interest whatever in either capital or profits. The amount to be received by the defendant for the use of money advanced by him, whether more or less, would depend solely on the number of yards of cloth, within a certain limit, manufactured each week, and not at all on the gain or loss in the business But if the amount to be received by the defendant for the money advanced by him, was only payable out of profits actually made, he then had a direct interest in such profits ; and as the amount to be paid would subtract so much from the fund on which the creditors of the concern had a right to rely for the payment

of debts due to them, the defendant, as to such third persons, would be clearly liable as a copartner. This is a well settled principle. (*Dob* v. *Halsey,* 16 *John.* 40 ; *Chase* v. *Barrett,* 4 *Paige,* 159 ; *Hesketh* v. *Blanchard,* 4 *East,* 144 ; *Waugh* v. *Carver,* 2 *H. Bl.* 247 ; *Bostwick* v. *Champion,* 11 *Wend.* 580.)

Such being the rule of law which must. govern the case, it only remains to inquire whether the defendant was to be reimbursed for the use of the money advanced by him, out of the profits actually made, or was to be paid therefor, profits or no profits, by Marble & Penny.

The amount to be allowed the defendant for the use of the money advanced by him, is mentioned as " a *profit* of one cent on the yard," a form of expression which would seem to indicate that the payment was to be made from profits and not otherwise. But the terms used are not decisive of the question, for they may have been intended to indicate that the amount to be allowed the defendant was a profit or remuneration, *to him,* for the use of his money, and not a share of the profits made in its use. It seems to me, however, if we look a little farther into this agreement we shall feel very little doubt as to what was intended. After providing that the defendant should be allowed " a profit of one cent on the yard for all cloths manufactured," not exceeding 6000 yards per week, the agreement goes on to declare that " the balance of *said* profits" should be paid to Marble & Penny for their services, and that they should also be paid " the *entire* profit arising from the manufacture and sale of all goods made by" them beyond said 6000 yards a week. This part of the agreement seems to be free from all reasonable doubt on the subject, and the other parts are entirely consistent with it. The profit allowed to the defendant was part of the same profit out of which Marble & Penny were to be paid for their services; that is, it was a share of the entire net profits of the business, and nothing else. The defendant was to advance the necessary capital to carry on the concern, which was to be under the care and superintendence of Marble & Penny ; the advances made by the defendant were first to be repaid, and out of the profits

which might remain he would be entitled to his "one cent on the yard," and Marble & Penny to the residue. This being the true meaning of the agreement between the defendant and Marble & Penny, a partnership existed between them, and the defendant was liable to the plaintiff for the goods sold. They were sold to the partners and were used for their benefit. In this respect the referee erred, and without looking at the other point made on the argument, although hardly raised at the hearing before the referee, the report must be set aside.

Ordered accordingly.