By the Court—Robertson, J.
It is plain, that the question first passed upon by the Referee, of the property in the article in question, lies at the foundation of the plaintiff’s right of possession.
Unless Creighton, on the formation of the firm of Creighton & Black, actually transferred and delivered the article in question, so as to become the joint property of the partners, he would still remain the owner. Ho mere agreement to contribute any articles, to become the subject of partnership dealings, would be sufficient, without an actual transfer and delivery; nor would even the subsequent employment of them in such partnership business, by itself, establish the sale and delivery of them to all the partners, as partnership stock. It is possible for partners to stipulate simply as to the profits of a business, where one is to furnish all the materials with which it is to be carried on, while both may bestow their labor; the only specific interest of all, in such case, is in the profits, Coll, on Part., §§ 17,18,) and the partnership is only in the use or employment of the articles as instruments of profit, (Champion v. Bostwick, 18 Wend., 183; Chase v. Barrett, 4 Paige, 148; Everett v. Coe, 5 Denio, 180; Coll, on Part.; § 18, n. 1.) The statements of the defendant show that, as to some parts of the agreement of the partners, it was merely inchoate, and the stipulations conditional; thus it was agreed that Creighton should put in his former stock, *316 at- such a fair valuation as would enable the parties to make an ordinary profit; but such price never was settled, and, on occasion of the only attempt to do so, the parties disagreed, and upon the ground, as stated by the defendant, that no profit could be made out of them, thus recognizing in a measure the right of Creighton to retain the ownership of the .articles, provided he did not charge the firm more than was sufficient to leave room for profit; but not only does no price seem ever to have been determined, or written instrument executed, but no credit was given in the books, or entry made, respecting the oWnership of the articles; they remained, except so far as they were used in the business of Creighton & Black, the same as before as to ownership, unless the mere agreement to transfer operated as a legal transfer, which it did not. The joint possession of them by both parties was equally consistent with a transfer of property and permission to use, and by itself was no evidence of an executed transfer. The determination of the value, which was an essential condition to a transfer, never took place; and unless we are at liberty to infer a sale, upon a quantum meruit, and an • agreement to pay upon demand, there was no undertaking by the defendant to pay anything. Besides this, it would be difficult to determine what interest the defendant would take, under the supposed agreement, in the stock when transferred,—what rights he would have in them, if the partnership had been dissolved immediately after it was formed. If it was governed by his interest in the profits, that was $1,000 a year and a fifth of the surplus; the proportions, therefore, could not be determined from that; and the parties must be supposed to acquire an equal interest in the capital stock. If so, the result would have been that the defendant acquired by such an agreement an ownership of one undivided half of the stock of Creighton, without paying anything, upon an undertaking to pay one-half the value, without any provision for deducting that price from his share of the profits,—a result not to be inferred without positive evi *317 deuce, or as an unavoidable conclusion from circumstances. It would seem that the effort to arrange the price to be paid Oreighton for the stock contributed by him, was not made until the close of the partnership, until which time the arrangement remained in the same indeterminate condition. The probability that no definite arrangement ever was made as to the transfer of the stock, is strongly increased, if not made certainty, by the testimony of young Creighton, to the effect that the defendant was not to withdraw any stock, because he had put none in; that of Hawley, to whom the defendant admitted that Oreighton was to take the stock and pay the debts; and the fact that the latter dealt with the stock as his own, after the dissolution. The finding of the Referee, that the chronometer in question was the property of the firm of Creighton & Black, is unsupported by evidence, and against evidence.
But even were such conclusion untenable, the same evidence would go to make out a case of transfer or release of the stock, after the dissolution, to Oreighton. The defendant had not paid for his interest in it, if any, and it was not unreasonable to believe he had relinquished such interest, upon an agreement to protect him against the debts; and his subsequent acquiescence in the resumption by Creighton of his entire ownership of the articles forming such stock, without any formal release, completed the retransfer in the same informal way in which the original transfer had been made.
The report of the Referee was, therefore, erroneous on one of those two grounds, and should be set aside. It, therefore, becomes unnecessary to pass upon the question of the different interpretation of the agreement made by the plaintiff, by means of the usage found by the Referee.
The judgment must be reversed, the report of the Referee set aside, the order of reference discharged, and a new trial had, with costs to abide the event.