By the Court:

Freedman, J.
It appears from the evidence that neither of the parties contradicted the other in express terms as to the expressions testified to by them in the course of such conversation, and it has been therefore very ingeniously argued, on the part of the appellant, that the referee erred in not giving effect to the testimony of both parties. I cannot conceive, however, how or *480 in what manner the referee could have done so. The effect of Coleman’s testimony was just the reverse from that which could be attributed to the testimony of the defendant; the referee, therefore, had to choose between Coleman’s version and that of the defendant; it was a disputed question of fact, and the referee, after taking into consideration all the other circumstances surrounding the transaction, decided that the agreement was made as testified to by Coleman. On examination of the whole testimony it does not appear that this decision is against the evidence, and for that reason the finding of the referee upon this point cannot be disturbed (Watson v. Campbell, 28 Barb. S. C., 421).
The main question, therefore, to be determined is, whether the agreement, as found, was a legal and valid agreement, upon which the defendant can be held liable to pay one half of the losses sustained by the plaintiffs on that venture, irrespectively of the commissions earned by them. If it was, the defendant in consequence of said agreement became, as between himself and the plaintiffs, a partner with them in respect to their share. It is true that the defendant could not, by an agreement with the plaintiffs alone, be clothed with all the rights of one of the original partners in the adventure, and thus become in the strict and technical sense a partner. But this was not necessary. If he agreed with the plaintiffs to take one half of their interest, to hold them responsible for one half of the profits, and to hold himself liable to assume one half of the losses, and the plaintiffs relied and acted upon it and changed their position in consequence of that assurance, it was a binding contract which did not require to be in writing (3 Kent’s Com. [10th ed.], p. 26; Smith v. Tarlton, 2 Barb. Ch., 336), for under no circumstances can the said agreement be considered and treated as a contract for the sale by the plaintiffs to the defendant of one half of their interest in the profits of that adventure. In general, if there be an agreement to enter into business or some particular transaction together, and share the profits and losses, this constitutes a partnership between the contracting parties, which is just as ex *481 tensive as the business proposed to be done, and not more so, and the parties may agree to share the risk and profits in whatever proportions they choose (Parson’s Mercantile, Law, p. 165 ; Vassar v. Camp, 14 Barb., 341; Hodgman v. Smith, 13 Barb., 302 ; Fitch v. Hall, 16 How., 175). There may be a partnership in the goods of a particular adventure, or it may be confined strictly to the profits thereof (Story on Partnership, sec 27, and cases there cited; 6 How. U. S., 122). It is not necessary that the capital should be jointly owned, nor that there should be a community of interest in the property out of which the profits are to arise; it is sufficient if there is a community of interest in the profits and losses (Vassar v. Camp, 14 Barb., 341; Smith v. Wright, 1 Abb., 243). In such case the partnership merely uses and employs the property owned by one of the partners (Penny v. Black, 9 Bosw., 310; Champion v. Bostwiek, 18 Wend., 182).
It consequently was not strictly necessary that the defendant should' have contributed funds towards the adventure. If he agreed to take one half of plaintiffs’ interest in the expectation of deriving a benefit therefrom, although he did not engage in express terms to assume any portion of the loss, if any should happen, he could not escape that liability in case the plaintiffs in any manner acted upon his agreement, and assumed a risk in consequence thereof which they would not have otherwise assumed; for a valid agreement to divide the profits of a business or adventure always implies an agreement 'for a corresponding division of its losses, unless the contrary is stipulated, or clearly apparent from the mutual intentions of the parties at the time of the making of the agreement. If, therefore, in case of success the defendant could insist upon the receipt of his full share of the profits under the agreement, it would be manifestly unfair, after the occurrence of a loss, to permit him to claim that there was neither mutuality nor consideration sufficient in the agreement to hold him to it.
It is therefore highly important, in the case under consideration, to determine whether, in case of a successful determination of the adventure, the plaintiffs, in case of then* refusal to account *482 to the defendant for his share of the profits, could be compelled to account. If the agreement in question had been made before the plaintiffs went into the adventure, there is no doubt that they could be so held. In such case the presumption would arise that the plaintiffs relied upon the eventual financial cooperation of the defendant, and assumed the risk in the expectation that in case of loss the defendant was bound to stand one half of it. An assurance to this effect might have enabled the plaintiff to enter into an adventure requiring twice the amount of their available means, and after having acted upon that assurance, and gained a success by means thereof, the law would hold them to their bargain, although the defendant did not contribute any tiring beyond his name and credit.
But the case under consideration is entirely different. The adventure had been entered into between the plaintiffs and other parties, and had begun, and all risk and liabilities which the plaintiffs ever incurred had been incurred by them at the time the conversation took place between Coleman and the defendant. The plaintiffs were under no obligation to permit the defendant to share in the enterprise, and the defendant parted with no consideration whatever for being allowed to come in. He contributed absolutely nothing towards bringing the enterprise to a successful close. Nor was any thing done or to be done by the plaintiff during the progress of the adventure as a consequence of, or induced by, any act or declaration of the defendant. What they were bound to do, and what the plaintiffs subsequently did, in and connected with the sale of the cargo of the Versailles, was entirely and exclusively in fulfilment of a previous duty owed by them to Kendall & Plympton and Haxwell, Wright & Go, their co-adventurers, under the agreement by which the adventure was projected and regulated, and for the benefit of the parties to that agreement. ' To constitute the plaintiffs and the defendant partners or joint adventurers, as between themselves, it is absolutely necessary that the defendant should have contributed something, some service, however small, some facilities, however slight, towards bringing the adventure to a successful close (Story on *483 Part., sec. 15). As lie has done nothing of the kind, a constituent and essential element of a partnership is entirely wanting in .this case, and the plaintiffs’ verbal promise to let the defendant have one half of their interest, not being supported by any consideration received therefor, was not binding upon them in case the enterprise proved a success. This being so, an agreement on the part of the defendant to make good one half of any loss which might occur cannot be implied by law. The conversation between Coleman and the defendant, hereinbefore referred to, was therefore a mere nudum pactum, and as such wholly insufficient to form the basis of any adjudication whatsoever (Ingraham v. Gilbert, 20 Barb., 151; Burnet v. Bisco, 4 John., 235; Smith v. Ware, 13 John., 251).
The judgment appealed from should be reversed, the order of reference vacated, and a new trial ordered, with costs to the appellant to abide the event.