# COURT OF APPEALS.

ABRAHAM LEGGETT and another, respondents, agt. GEORGE
M. HYDE, impleaded, &c., appellant.

*What constitutes a partnership as to creditors — interest in the profits*

Where an agreement was made by a partnership firm with a third person,
that in consideration of a loan made by the latter to the firm of a cer-
tain sum of money, for one year, the firm would pay such person one-
third of the profits of their business to be settled half yearly; and at
the end of the year take him in as a partner, if the firm and he should
feel satisfied, on his making further investments and putting in more
capital:

*Held*, that by the agreement such person had a specific interest in the
profits as profits, and became a *partner* as to the creditors of the firm
and as to third persons. (CHURCH, *Ch. J., dissenting*.)

*Roger A. Pryor*, for appellant.

*C. Van Santvoord*, for respondents.

FOLGER, *J.*—At the trial each party asked the court to
direct a verdict in its favor. Each thereby conceded that
there could be no dispute upon any question of fact; each
thereby conceded that there was left for decision only a ques-
tion of law, and that it arose upon a settled and uncontradicted
state of facts.

Taking the view of the testimony the most favorable for
the appellant, the facts are these: In 1869 one Putnam and
Henneberger were partners in business, under the firm name
of A. D. Putnam & Co. In that year the appellant invested
or deposited with that firm $1,500. This sum was credited,
on its books, to Frederick Hyde, the son of the appellant;

for this sum the appellant was to share in the profits of the business of the firm. His share was to be one-third, and demandable by him at the end of the year. At the end of the year his share of the profits was $500. This sum was also placed to the credit of Frederick Hyde; then, in 1870, the appellant loaned to the firm, for one year, the original sum of $1,500 and the $500 of profits, thus making $2,000. In consideration of this loan the firm agreed to hire Frederick Hyde as clerk, at ten dollars per week, for the year; to pay the appellant one-third of the profits, which were to be settled half-yearly, and at the end of the year to take him in as a partner, if the firm and he should feel satisfied, on his making further investments and putting in more capital. Though it is nowhere in the testimony so stated in terms, yet it is fairly to be inferred that the $2,000 was loaned to be used in the business, and that if, at the end of the year, the appellant did not become an ostensible partner he was to be repaid out of the concern the $2,000, but without interest strictly as such. The appellant never interfered in the affairs of the concern, nor exercised any control in the business. At the end of the first six months there were no profits of the business. The appellant never received anything for his $2,000, nor anything by way of interest money.

The prominent and important facts are, that he loaned the firm a sum of money to be employed as capital in its business, and that, therefore, he was entitled to have and demand from it one-third of the profits of its business every half-year. In my judgment, there results from this that Putnam and Henneberger, making use of that money as capital in that business, used it there for the benefit of the appellant; because any return to him for the loan to them must come from the use of it. If not used so that profits were made, he got no return. Further, that he had interest in the profits which, while they were anticipatory, was indefinite as to amount, but when they were realized, was measured and specific as to share. Further, that his interest in them was in them as

profits; that is, that he had a right, on the lapse of every six months, though having no property in the whole capital, to have an account taken of the business, and a division made of the profits, then appearing (*Ex parte Hampen*, 17 *Vesey*, 403); that he had this right to an account and a division at other time than at the end of each six months, if, at any other time, the exigencies of the concern — as the dissolution of the firm by death of one partner, or any other reason — required an account to be taken. He had that interest in the profits, as profits, because he could claim a share of them specifically, as they should appear on each six months' or other accounting of the business of the term then ended, and could then have and demand payment of his share. By the terms of his contract with the firm, if it be upheld as made, he was interested in and affected by the results only of the year, as ascertained at the end of each six months. It would not affect him in this right to account, though the business of a previous year had been disastrous. If either six months' business should yield a profit, he could insist on payment to him of one-third thereof, and could demand that an account be had of the business of any six months, to ascertain if there had been profits. It was one-third of the profits that he was to have, and not a sum in general equal to that one-third; so that he was to take it as profits, and not as an amount due,— not as a measure of compensation, but as a result of the capital and industry. So it is said in *Everett* agt. *Coe* (5 *Denio*, 182): "If he is to be paid out of profits made, then he has a direct interest in them." And see *Ogden* agt. *Astor* (4 *Sandf.*, 321, 322). The learned counsel for the appellant states the question of law to be this: Does a loan of money, with an agreement for compensation from the profits of the business, *per se* constitute the lender a partner *quoad* the creditors of the firm? Is this statement of it correct? Does the phrase "compensation from the profits" fully meet the case? Does it fully present the fact that by the agreement the appellant obtains an interest in the profits, as such, and a

Leggett agt. Hyde.

right to insist upon an accounting and a division thereof half-yearly ? With this supplement, the question for decision is as stated by him.

I am not to say what I think ought to be the answer to it, was this a case of first impression. I am to declare what I ascertain to be the answer already given by the law in this state, as it has been settled, and declared by the authorities. The argument of the learned counsel is very ingenious, and very forcible when considered in reference to what should be the proper rule, and what the true reasons upon which a rule should be founded. Yet if it is found that, by a long course of decisions or by long acquiescence in and adherence to a rule some time ago authoritatively promulgated, there has been established a principle of commercial law upon which the community has acted, it is the duty of the courts to adhere thereto, leaving it to the law making power to find a remedy, if remedy be needed, in a positive authoritative enactment. In England this has been done, and by act of parliament an important change has been made (28 & 29 *Vic., ch.*, 86). In the first place it matters not that the defendants meant not to be partners at all and were not partners *inter sese*. They may be partners as to third persons, notwithstanding (*Manhattan Brass Co.* agt. *Sears*, 45 *N. Y.*, 797), and this effect may result, though they should have taken pains to stipulate among themselves that they will not in any event hold the relation of partners. Among the reasons given, is this, whether it be strong or weak: That whatever person shares in the profits of any concern shall be liable to creditors for losses also, since he takes a part of the fund which in great measure is the creditors' security for the payment of debts to them (*Waugh* agt. *Carver*, 2 *H. Bl.*, 235, *citing Grace* agt. *Smith*, 2 *Black.*, 998). The doctrine took its rise in the decisions in these cases. And commenting upon them, the text writers who have presented most forcible criticisms upon it say: " The principle laid down by LEE GRAY, C. J., in *Grace* agt. *Smith*, has served as the

foundation of a long line of decisions which cannot now be overruled by any authority short of that of the legislature; and in all cases in which there is no incorporation, nor limited liability, it must still be regarded as binding on the courts" (*Lindley on Part.*, 36). "The doctrine is completely established upon the very ground asserted in *Grace* agt. *Smith* (*Story on Part.; sec.* 36, *note* 3), and so Mr. Parsons, in his book on Partnership, quoting lord ELDON, *ex parte* Hamper: "But if he has a specific interest in the profits themselves, as profits, he is a partner," adds: "Undoubtedly he is; every principle of the law of partnership leads to this conclusion." He contends, however, that the specific interest in profits which is to make a person a partner must be a proprietary interest in them existing before the division of them into shares. See also 1 *Kent's Commentaries* 25 *note v,* where it is said: The test of partnership is a community of profits — a specific interest in the profits as profits — in contradistinction to a stipulated portion of the profits as a compensation for services.

The courts of this state have always adhered to this doctrine and applied or recognized it in the cases coming before them. In *Walden* agt. *Sherburne* (15 *J. R.*, 409), in 1819, SPENCER, J., delivering the opinion of the court, says: "No principle is better established than that every person is to be deemed in partnership if he is interested in the profits of a trade, and if the advantages which he derives from the trade are casual and indefinite, depending on the accidents of trade. See also *Dob* agt. *Halsey* (16 *J. R.*, 34), in the same year. The principle is recognized in *Chase* agt. *Barrett* (4 *Paige*, 148), by WALWORTH, chancellor; in 1833 by the court of errors, per WALWORTH, Ch.; in 1837 in *Champion* agt. *Bostwick* (18 *Wend.*, 175); by the supreme court in 1841, per COWEN, J., in *Cushman* agt. *Bailey* (1 *Hill*, 526); and again in 1848, per BEARDSLEY, Ch. J., in *Everett* agt. *Coe* (5 *Denio*, 180); by the superior court of the city of New York, per SANDFORD, J., in *Oakley* agt. *Aspinwall* (2 *Sandf.*,

7–21); by the present supreme court in repeated decisions, of which see *Catskill Bank* agt. *Gray* (14 *Barb.*, 471); *Hodgeman* agt. *Smith* (13 *id*, 302); by the court of appeals, PECKHAM, J., in *Manhattan Brass Co.* agt. *Sears* (45 *N. Y.*, 797); per LEONARD, C., *Ontario Bank* agt. *Hennessy* (48 *N. Y.*, 545–552); per GARDINER, J., *Burckle* agt. *Eckhart* (3 *N. Y.*, 132–138).

It is not too much to say the limited partnership act (1 *R. S.*, 764) is a legislative and practical recognition of this rule of commercial law. Indeed, if it shall be held that such a contract as that of the appellant does not make him a partner as to third persons, there is little or no need of that act. The situation of the special partner is more onerous than that of the appellant under such a ruling. The first may lose his capital invested, as well as profits, by the same being absorbed in the payment to creditors. The latter may lose his anticipated compensation for his money loaned, but his position is quite as favorable to him as that occupied by creditors for the recovery of his money advanced. Neither may interfere — to transact business or to sign for the firm, or to bind the same — both may advise as to the management; both may examine into the state and progress of the partnership concerns — the special partner from time to time, the appellant at the end of every six months. In one respect the special partner is better placed. He may stipulate for legal interest on his capital invested, as well as for a portion of the profits. The appellant, if he bargained for profits in addition to interest, might be in conflict with usury act.

It is evident that most of the conveniences and advantages of the limited partnership act, and some which it does not give, might be obtained by a loan of money, with a stipulation for compensation for its use, by a share of the profits, if thereby a partnership is not created as to third persons. This is not decisive as to what the law is. But it is strongly indicative of the view of the law held by the revisers and by the legislature. There have been from time to time

certain exceptions established to this rule in a broad statement of it. But the decisions by which these exceptions have been set up still recognize the rule, that where one is interested in profits, as such, he is a partner as to third persons. These exceptions deal with the case of an agent, servant, factor, broker or employe, who, with no interest in the capital or business, is to be remunerated for his services by a compensation from the profits, or by a compensation measured by the profits; or with seamen on whaling or other like .voyages, whose reimbursement for their time and labor is to finally depend upon the result of the whole voyage. There are other exceptions, like tenants of land or a ferry, or an inn, who are to share with the owners in results, as a means of compensation for their labor and services. The decisions which establish these exceptions do not profess to abrogate the rule — only to limit it. It is claimed by the learned counsel for the appellant that the rule as announced in *Grace* agt. *Smith*, and *Waugh* agt. *Carver*, has been exploded, and another rule propounded which shields the appellant. He is correct as far as the courts in England are concerned (*Cox* agt. *Hickman*, 8 *H. of E. C.*, 268, 269; *C. B. N. S.*, 99; *E. C. L. R.*; 47; *and Bullen* agt. *Sharp*, *Law Rep.*, 1 *Com. Pl.*, 86). These cases affirm that, while a participation in the profits is cogent evidence that the trade in which the profits were made was carried on, in part, for or in behalf of the person claiming the right to participate; yet that the true ground of liability is that it has been carried on by persons acting in his behalf. Those cases were very peculiar in their circumstances. After the judgments rendered in them the parliament deemed it needful to enact that the advance of money by way of loan, to a person in trade, for a share of the profits, should not of itself make the lender responsible as a partner (28 *and* 29 *Victoria*, *ch.* 86, *as cited in Parsons on Part.*, 92, *note t*). If the decisions in the cases cited went as far as is claimed, it would seem that the act was supererogatory. It is suggested, however, by KELLY,

Leggett agt. Hyde.

C. B., in *Holm* agt. *Hammond* (*Law Rep.*, 7, *Exch.*, 218), that the effect of the statute is, that the sharing in the profits by a lender shall be no evidence at all of a partnership. At all events, those decisions have been accepted in England as settling the rule as above stated (*See case last cited and cases therein referred to*).

Without discussing those decisions, and determining just how far they reach, it is sufficient to say that they are not controlling here; that the rule remains in this state—as it has long been—and that we should be governed by it until here, as in England, the legislature shall see fit to abrogate it.

The references upon the appellants' points do not show that the courts of this state have yet exploded the rule I have stated. I have consulted all the authorities cited (save a few of which I had not the books, or as to which there was a mis-citation), and I do not find that the rule is questioned, further than to apply to the facts of the particular case some one or more of the exceptions to the rule which I have stated to exist.

I am of the opinion that the judgment appealed from should be affirmed, with costs.

All concur, except CHURCH, Ch. J., dissenting.