# IN COMMON PLEAS OF LUZERNE CO

## HAMMOND VS. WEIDOW.

An injunction will be dissolved where the answer fully disproves the allegations of fraud, and shows a bona fide debt and full consideration, it not appearing that the suits, though several in number, were vexatious or malicious·

In Equity.. Rule to dissolve injunction.

Opinion by HANDLEY, J. February 10, 1879.

The complaint here is, that Weidow, landlord, distrained upon the goods and chattels'of Hammond, his tenant- that the plaintiff commenced proceedings before an alder. man to compel the defendant to defalcate the just debt or account of the plaintiff out of the sum said to be due for rent; that the plaintiff obtained judgment in said proceedings against the said defendant; that subsequent thereto, and execution issued by the plaintiff, the defendant issued his certiorari, and brought up said proceedings to the Court of Common Pleas, and thereafter issued another landlord's warrant, and levied upon the goods and chattels of the plaintiff again; whereupon the plaintiff commenced proceedings again before an alderman to compel the defendant to defalcate the just account of the plaintiff. The plaintiff, therefore, prays that an injunction issue to restrain the defendant from harrassing and oppressing the plaintiff, and that the plaintiff may have such other and further relief as equity and good conscience may require. To this complaint the defendant filed his affidavit, by way of answer, denying the allegations of the plaintiff. The writ of injunction, being largely a preventive remedy, will not ordinarily be granted where the parties are in dispute concerning their legal rights, until the right is established at law. High on Inj. 7, § 8, and cases there cited. As a preliminary injunction is, in its nature or operation, somewhat like a judgment and execution before trial, it is only to be resorted to from a pressing necessity. It is, therefore, a preventive remedy only: Mammouth Vein Coal Company's Appeal, 54 Pa. St. Rep. 183. An injunction will be dissolved where the answer fully

disproves the allegations of fraud, and shows a bona fide debt and full consideration, it not appearing that the suits, though several in number, were vexatious or malicious. The most frequent ground for refusing relief by injunction against a suit at law is, that the defense urged may be used in the action at law itself without resort to equity: High on Inj. 31, §§ 45- 6. It was the duty of the plaintiff in this proceeding to issue his writ of replevin within the period fixed by law, and thus protect his legal rights. Having failed to do so, we know of no good reason why this injunction should be continued.

Injunction dissolved, and rule made absolute.

## NOTES OF RECENT DECISIONS.

*Action—For Breach of Contract; When Accrues.* —If a vendor who contracts to deliver cotton at a future day certain, receives payment of the price and before the day appointed disables himself from complying with his contract, the purchaser may treat the contract as rescinded and sue presently for the money paid out; and an attachment on such a debt would not be premature, though commenced before the time fixed for the delivery of the cotton; but where there is no proof of a breach of the contract, other than failure to deliver on the appointed day, an attachment sued out before that time is prematurely brought, and cannot be maintained. Alabama Sup. Ct.. Dec., 1878. *Russell* v. *Gregory admr.*

*Ignorance of Fact—When does not Excuse.*—The person selling wine and beer is bound to know the law at his peril, and also whether the persons to whom he sells are within the prohibited classes. Ignorance of such facts will not excuse in police regulations, etc. Iowa Sup. Ct., Dec., 1878. *Dudley* v. *Santhine.*

*Landlord and Tenant—Distress for Rent: Property of Principal in Hands of Agent.*—Goods intrusted to an agent

to be sold on commission, and found on the demised premises, are not subject to the distress of the landlord for rent due by such agent. The rule of the common law, that the goods of a stranger on demised premises are subject to distress of the landlord, has yielded and must continue to give way to the growing necessities of trade and business.

The principle covering these cases during the tenancy, except when the goods are in the custody of the law, is this: when the tenant in the course of his business is necessarily put in possession of the property of those with whom he deals, or of those who employ him, such property, although on demised premises, is not liable to distress for rent due thereon from the tenant. Pennsylvania Sup. Ct., Nov., 1878. *Howe Machine Co.* v. *Sloan.* Opinion by Sharswood, J.

In *Lynch* v *Commonwealth*, 6 W. Not. Cas. 392, it was held not to be ground for an order in arrest of judgment that the defendant in an indictment for larceny, who was out on bail, failed to appear upon call when the jury returned with their verdict, and that the verdict was received and sentence pronounced in his absence. Agnew, C.J. who delivered the opinion of the court, reviewed the history of the criminal law of the State relating to larceny, and showed that that offense was not " one of those offenses which in this State were tried in the solemn forms of the court of England required by the act of 1718 to be adopted in cases then declared to be capital." In *Jacobs* v. *Com.*, 5 S. & R. 315, it was held that upon an indictment for larceny it was not necessary any arrangement should appear of record. The law is stated by Bishop (1 Crim. Pro., § 275) as follows: "If imprisonment is to be inflicted, or any other punishment higher than a fine, whether the crime is treason, felony, or misdemeanor, the defendant must be personally present." And Wharton says (3 Cr. L. 2949): "The better view is that in capi-

tal, cases if not in all felonies, the record must show that the defendant was present at trial, verdict and sentence."

That he must be present upon an indictment for burglary is still the law in Pennsylvania. *Prins* v. *Com.*, 6 Harris, 103.

————

The Champaign *Times* has taken the trouble to examine the reported cases of the Supreme Court of Illinois from January, 1875, to January, 1877, so as to ascertain how many cases have been taken to the Sapreme Court from the decisions of each judge in the State, showing how many in each case have been affirmed, and how many reversed; the result of which the *Times* publishes. The list comprises 37 judges. The first three at the head of the list stand as follows: Judge Wilcox, 6 cases affirmed and 1 reversed; Judge Wallace, 10 affirmed and 2 reversed; Judge Lacy, 34 affirmed and 9 reversed. The last three judges stand as follows: Judge Murphy, 7 cases affirmed and 9 reversed; Judge C. B. Smith, 23 affirmed and 36 reversed; Judge Allen, 17 affirmed and 29 reversed.

————

Judge McAllister, of the Circuit Court of Cook County, Ill., has decid ed in a recent case of The People v. McDonald, that an officer has no right to break open a dwelling house without a warrant, for the purpose of finding parties in the act of committing misdemeanors, and if one is killed by a person resisting such entry, the homicide is justified. And when a warrant was issued for a past offense, and was not for the bonafide purpose of arresting the party, it will not afford any justification.

————

The village of Kirkwood, Ill., having a population of

1,400, it is said, has not a lawyer in the place.

THE oldest of the English judges is Sir Fitzroy Kelly who is 83 years; the youngest, Lord Thesiger, who is 41.

The oldest Irish judge is Judge O'Brien, who is 73; the youngest, the Right Hon. Gerald Fitzgibbon, who is 45.

---

REQUISITION OF GOVERNOR.—The case of Work vs. Corrington, recently decided by the Supreme Court of Ohio, is a valuable contribution to the law of inter-State extradition, upon a point that has, of late, been the occasion of much discussion. The Court holds that a Governor who receives a requisition from the Governor of another State for the surrender of a fugitive, if the case is within the Constitution and the act of Congress, has no discretion as to the issue of the warrant of extradition, but it is his imperative duty to do so. It is, however, decided that he may, in a proper case, revoke the warrant issued, and if he does, the Court cannot inquire into his grounds for doing so.

FIXTURES.—*Arnold* v. *Crowder* (81 Ill. 56), page 260.
As between mortgagor and mortgagee, platform scales fastened to sills laid upon a brick wall set in the ground for weighing stock and grain, and intended for permanent use, are part of the realty. The court remark: "Such a structure, if not indispensable, is quite necessary to a farm worth more than six thousand dollars, situate in the rich county of Sangamon, highly productive of the grasses and grains necessary for stock of all kinds, and where there is much commerce in these articles." They cite *Walmsley* v. *Milne,*7 C. B. (N. S.) 115, where a hay-cutter was affixed to a stable; *Fairis* v. *Walker*, 1 Bailey (S. C.), 540, the case of a cotton gin; *Bishop* v. *Bishop*, 11 N. Y. 123, where hop poles were piled on the ground; *Weston* v. *Weston*,102 Mass. 514, the case of a bell hung in the cupola of a barn; and *Bliss* v. *Whitney*, 9 Allen, 114, the case

of platform scales.

ICY SIDEWALK.—*City of Quincy* v. *Barker* (81 Ill. 300), page 278. A person walking in the day time along a sidewalk, twelve to sixteen feet wide, with which he was acquainted, stepped on a patch of ice about one foot wide and from two to four inches thick, in the center of the walk, and fell and was injured, where there was nothing to prevent his passing on either side of the ice; held, that he could not maintain an action against the city for the injury. *City of Chicayo* v. *Bixbg* (84 Ill. 82), page 429. Where a city sidewalk is constructed with a step at change of grade, and the step is properly constructed, the city is not liable in damages to one who sustains an injury by falling on the step when it is slippery with ice. It would be impolitic to make any different rule in Chicago, where the streets are (or used to be) so much up and down stairs.

MUNICIPAL CORPORATION——NEGLIGENCE.—*Campbell's Admx.* v. *City Council of Montgomery* (53 Ala. 527), page 656. The duty of a municipal corporation to keep its streets in repair does not extend to matters of mere police regulation, like the prevention of violence or disorder; so where a complaint alleged that a municipal corporation, in neglect of its duty to repair and keep safe its streets for passengers, suffered the explosion of powder between anvils within the city limits, whereby the plaintiff's intestate, while walking on one of said streets, was killed, by a fragment of an anvil shattered by such explosion; held, to state no cause of action. This case is not distinguished from *Boyland* v. *City of New York*, 1 Sandf. 27, where a committee of the common council, acting with a committee of citizens, called a public meeting in one of the city parks for the consideration of national affairs, and while the meeting was in session, the plaintiff, passing by, was injured by the discharge of a cannon by persons in the park. In both these cases, say the court, "no relation whatever existed between the city and the persons whose negligence or wantonness produced the injury. Without such relation, or the breach of an absolute, perfect corporate duty, no liability could rest on the corporation."

PHYSICIAN—DUTY TO TESTIFY AS EXPERT.—*Ex parte De-*

*ment* (53 Ala. 389), page 611, holds that a physician is punishable as for a contempt for refusing to testify as an expert in a criminal case, without being paid for his testimony as for a professional opinion. In a note is given the opinion in *Buchanan* v. State (Indiana) holding precisely the contrary doctrine, and referring to, but not commenting on the principal case. This is not a principle upon which "doctors disagree," but upon which courts do, it seems.

VERDICT ON SUNDAY.—*Reid* v. *State* (50 Ala. 403), page 627. A cause having been submitted to a jury late on Saturday night, and the jury having agreed on the next day, Sunday, it is lawful for the court to receive it on that day and adjourn until the next day. This opinion is elaborate and well considered. The matter is regulated by statute in our State. Among the cases cited is the historical one of William Penn, indicted for a tumultuous assembly, on the trial of which the court assembled twice on Sunday to receive the verdict, and only refused to receive it because it did not suit the government. (In those days, the jury, it seems from Penn's case, were deprived, not only of meat and drink, but fire and *tobacco*, which last probably was the hardest of all to some of them )

WIFE'S FUNERAL EXPENSES.—*Smyley* vs. *Reese* (53 Ala. 89), page 598,holds that although a wife is entitled to her separate property, and the husband is not liable for her ante-nuptial debts, yet he is bound, as at common law, to bury her and pay the funeral expenses, and cannot claim re-imbursement out of her estate therefor, nor for a monument which he erects at her grave. The court declined to consider the question whether the husband would be entitled to re-imbursement if his means were inadequate and those of his wife were sufficient.

PARTNERSHIP—WHEN LOAN OF MONEY CONSTITUTES: EVIDENCE.—Where money is loaned by one to be used by another in his business, and to be repaid at all hazards without regard to the profits of that business, the lender is not thereby constituted a partner as to the third per-

sons. To make the lender such a partner, the repayment of the loan must depend upon the profits. Everett v. Coe, 5 Denio, 180. So where one loaned money for such a purpose, and took a chattel mortage as security, payable absolutely, the fact that the borrower promised to turn over to the lender, to apply on the mortgage, one-half the profits to be realized in the business, did not constitute the lender a partner in such business. The legal presumption is that the receipts were to be applied in payment of the borrowed money. Leggett v. Hyde, 58 N. Y. 272,-276, distinguished. An unsigned paper, purporting to be an agreement between the parties to the loan, and drawn up at the time of the negotiation, is admissible in evidence as part of the *res gestæ* and to show the understanding of the parties. Judgment affirmed. *Eager* v. *Crawford.* Opinion by Miller, J. N. Y. Court of Appeals.

[Decided Jan. 21, 1879.]

*False pretences*—The plaintiff in error called upon a firm of dry goods merchants to purchase goods, and being questioned with reference to his pecuniary responsibility, represented to one of the firm that he commenced business with $30,000 capital; that his capital was unimpaired; that he did not owe at the time more than $35,000. The goods were sold plaintiff in error upon such statement. As a matter of fact the evidence in behalf of the people showed that at the time of the purchese of the goods the plaintiff in error owed about $96,000, and that he failed less than three months afterwards owing $150,-000, and his assets amounting to about $30.000.

Held, that the evidence was sufficient to sustain the conviction of the crime of obtaining goods by false pretences. [Abbott v. The People. N. Y. Sup. Ct. October. 1878.]

*Evidence: Tender*—Evidence outside of the issues raised by the pleadings is immaterial, and should be excluded.

The judge at the trial refused to allow defendant to pay into court at the trial the amount of an alleged tender. Held, that the defendant could derive no advantage from his exception to such refusal, where the jury found a verdict for plaintiff for a greater sum than the alleged tender.