### HAWKINS v. CAMPBELL et al.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. PARTNERSHIP—WHAT CONSTITUTES.
    An agreement whereby the parties were to share in the profits of the business, and showing that each had contributed something to its capital, and possessed a definite interest in the business, is sufficient to constitute them partners as to third persons, irrespective of their agreement not to be partners, and that the liability of one of them was to be limited to a certain amount.

2. APPEAL—HARMLESS ERROR.
    The contention that a finding that defendants were not, as a matter of law, co-partners, was harmless, because the debt sued on accrued prior to the incoming of defendant C. as a partner, is untenable, where there was a question for the jury as to whether the debt accrued prior or subsequent to C.'s becoming a partner.

Appeal from trial term, New York county.

Action by William B. Hawkins against Neil Campbell and another. Judgment for defendant Campbell, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Omar Powell, for appellant.
I. B. Ripin, for respondents.

O'BRIEN, J. The plaintiff, as assignee of the Waterbury Manufacturing Company, brought this action to recover an unpaid balance due for goods alleged to have been sold and delivered to the defendants as partners. The defendant Bell did not answer, but the de-

fendant Campbell offered a defense denying the allegation of partnership, and that the plaintiff's assignor delivered any goods on his account. At the trial papers were offered in evidence to show the relation between the defendants. From one of these it appears that on November 27, 1895, they entered into a contract whereby Campbell agreed "to become the financier for the buying and selling of vapor valves and connections, devoting his time and attention, together with Mr. Bell, in the advancement of the business already established by Mr. Bell. He (N. Campbell) is understood not to be regarded as a co-partner, but simply to advance money up to the extent of two hundred and twenty-five dollars ($225) in buying stock and paying incidental expenses in said business, said stock to be his property until sold, when profits on same are to be divided as follows: One-third to Neil Campbell, and two-thirds to Geo. H. Bell. Said Neil Campbell to take charge of the office; to receive all cash for goods; pay all bills incurred up to the limit above stated. This agreement to continue until the business shall be made into a stock company under New Jersey laws, in which event Geo. H. Bell is to receive two-thirds of stock of said company, and Neil Campbell one-third of stock of said company." By another instrument, executed the same day, Bell assigned to Campbell a one-third interest in the valve attachment which he was exploiting; and by still another paper, also executed that day, it was provided that Bell should be paid out of the profits a sum specified for property used in the business, and which he owned, after which payment the property was to belong, one-third to Campbell, and two-thirds to Bell. The $225 advanced by Campbell was to be paid in the same way out of the profits.

The principal question here arising is whether, under the agreements of the defendants made on November 27th, Campbell became a partner as to third persons. He is described in the contract as a "financier," and is stated "not to be regarded a co-partner"; but it is settled that such provisions and understandings cannot overrule the substance, and that, whatever their effect between the parties, the person attempting to exempt himself does not succeed in doing so as to third persons without notice of the limitations, if he is in truth a partner. Manufacturing Co. v. Sears, 45 N. Y. 797. It has been held that participation in the profits as such makes one a partner as to third parties, and liable for the debts. Leggett v. Hyde, 58 N. Y. 272; Hackett v. Stanley, 115 N. Y. 625, 22 N. E. 745. On the other hand, where a party is only interested in the profits of a business as a means of compensation for services rendered or for money advanced, he is not a partner. Or as stated in Hackett v. Stanley, 115 N. Y. 631, 22 N. E. 747: "It cannot be disputed but that a loan may be made to a partnership firm on conditions by which the lenders may secure a limited or qualified interest in certain profits of the firm without making them partners in its general business." The test seems to be whether the person sought to be held did or did not receive his share of the profits on account or by reason of an interest in the business. There is a line of decisions in this state which recognizes the rule to be that, where one is interested in the profits as such, he is a partner as to third persons. The application of this

principle has recently been considered by this court in Johnson v. Alexander (handed down December 8, 1899) 61 N. Y. Supp. 351. Besides the citation of numerous other authorities, the judge writing the opinion quotes the following from Leggett v. Hyde, 58 N. Y. 280:

"There has been from time to time certain exceptions established to this rule in a broad statement of it; but the decisions by which these exceptions have been set up still recognize the rule that, where one is interested in profits as such, he is a partner as to third persons without notice. These exceptions deal with the case of agent, servant, factor, broker, or employé who, with no interest in the capital or business, is to be remunerated for his services by a compensation from the profits or by a compensation measured by the profits, or with that of seamen on whaling or other like voyages, whose reimbursement for their time and labor is to finally depend upon the result of the whole voyage. There are other exceptions, like tenants of land or a ferry or an inn, who are to share with the owners in results as a means of compensation for their labor and services. The decisions which establish these exceptions do not profess to abrogate the rule,—only to limit it."

Such exceptions are well illustrated by Hill v. Miller, 76 N. Y. 32, and German-American Bank v. Morris Run Coal Co., 74 N. Y. 58. It was further stated in the opinion (Johnson v. Alexander):

"The general principle upon which these exceptions have been established is that in such cases the parties have no interest in the profits or business, but simply have adopted a division of receipts as a method of ascertaining the amount of compensation for the services rendered or property used. But where the parties contemplate that profits, as such, should be divided, giving to the persons entitled to receive their proportion of such profits the right to call the remaining persons to account, giving each, one to the other, the right to enforce the agreement as a co-partner, so that the profits as a whole vest in the adventurers, to be divided among them in the proportion agreed to, then, as to third parties, the co-partnership is formed. The application of this rule is further illustrated in Hull v. Barth, 37 App. Div. 359, 55 N. Y. Supp. 1103."

In the case at bar it is impossible to read the agreement made as one for compensation for services, the contract distinctly stating that the shares of the profits, whatever they be, should be divided into different portions, and showing that each had contributed something to the capital, and had a definite fixed interest in the business, as it should continue to be carried on by the parties to the agreement or thereafter by a corporation. Thus, Campbell owned a one-third interest in the patent, and (after payment for the same) a one-third interest in the property used in the business, was to receive one-third of the profits, and was to give his time and attention to the business. Applying the test referred to, the question resolves itself into whether Campbell, as a matter of fact, was entitled to receive one-third of the profits on account of his one-third interest in the business. It seems to us plain that that was just what the agreement provided for. Although Campbell's liability was specifically limited to $225, there still remains the cogent fact that he had an actual interest in the enterprise and the property. The fact that his contribution is limited was, of course, immaterial. If he became a partner, he was liable for all the debts; and the stipulation that the money to be paid Campbell was for the loan of this sum of $225 cannot override the whole purpose and scope of the contract.

In this connection, reliance is placed upon the case of Cassidy v. Hall, 97 N. Y. 159, which, however, we think is clearly distinguishable from this one. There the defendants were to advance money to execute orders of a certain company, to collect the money upon the same, and to pay themselves from this fund a sum measured with reference to the profits. They were, in substance as in form, simply financiers. But here Campbell was, in substance, a jointly interested partner.

We think it was error for the trial court to hold, as matter of law, that a partnership between the defendants was not established, and to decline to charge upon this question, as requested by the plaintiff.

Campbell insists, however, that such error was harmless, because, even though the agreement constituted him a partner, he did not become one till after the debt had been contracted. If that were established beyond question, it would not be necessary to reverse the judgment on account of the error in the charge, since an incoming partner is not liable for past debts. From the testimony, however, it appears that that was a question of fact for the jury.

The defendant Bell ordered the goods in question on November 14, 1895, before any association with Campbell. The order which was given to the plaintiff, Hawkins, as sales agent of the Waterbury Company, was much larger than usual, and, as an inducement to fill it, Bell stated that he had a contract to sell 10,000 of the 25,000 desired. Hawkins sent the order on the same day to his principals, telling them to rush it; but afterwards, and before November 27th, when the defendants' agreement was made, Bell told him not to proceed with the order, as his expected purchaser had disappointed him. Hawkins said he would see how far his people had gone with the work, and advised Bell to associate himself with capital. Hawkins testified that he transmitted the order, and that samples were made, but that his company did not intend to fill the order without some better guaranty of payment than Bell's responsibility, which was known to be weak; and that, hoping Bell would get a partner with capital, the matter was purposely left open, Bell not being told whether or not the order would be filled. Bell admits that the goods were not in fact made up, and that some time after November 27th he told Hawkins he had associated himself with Campbell. On November 29th Campbell's check for $89, in full of some prior bill, was sent to the Waterbury Company, and Hawkins then took it for granted that Campbell was Bell's partner, and instructed his company to go ahead, but to be safe, and make up only 10,000 valves. From this evidence, it is plain that the jury might have found that the plaintiff did not on November 15, 1895, absolutely bind his company to fill the order for 25,000 valves, but accepted it provisionally, reserving the right to withhold the goods until satisfactory provision for payment should be made. It might also be inferred that Bell did not become obligated to pay at once for what the company was not bound to deliver, and that the goods were to be delivered as the Waterbury Company should see fit, and were to be paid for as delivered, or within such time as the parties might fix. Thus, the jury might have concluded that the debt did not accrue until after November 27th, when

Campbell became liable as a partner. The question which was given to the jury was not as to the date when the debt accrued, but merely whether Campbell, by his conduct, held himself out as a partner. Whether he did or did not is quite immaterial, for he was, as matter of law, a partner; and he was liable for debts incurred after he became such, regardless of whether or not the creditors know of the nature of his agreement or of its existence at all.

We think the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.