ABRAHAM W. LEGGETT et al., Respondents, *v.* GEORGE H. HYDE, impleaded, etc., Appellant.

One who is interested in the profits of a business as profits, and not as a means of compensation for services, is a partner as to third persons, and is liable as such for the debts.

Defendant H. loaned to the firm of A. D. P. & Co., $2,000, to be used in the business for one year, under an agreement that he was to receive one-third of the profits, which were to be settled half-yearly, and at the end of the year if he did not conclude to become a partner, he was to be repaid his $2,000 out of the concern. *Held* (CHURCH, Ch. J., dissenting), that the money so invested was used by the firm for the benefit of H.; that he had an interest in the profits as such, not as a measure of compensation, but as a result of the capital and industry; and that as to the creditors of the firm he was a partner, and jointly liable with the others for the partnership debts.

The authorities upon partnership liabilities collated.

(Argued June 12, 1874; decided September 22, 1874.)

APPEAL by defendant George M. Hyde from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiffs entered upon a verdict, and affirming order denying motion for a new trial.

This action was brought against defendants, who were alleged to be members of the firm of A. D. Putnam & Co., to recover for goods sold and delivered to that firm. Defendant Hyde denied that he was a partner. (Reported below, 1 N. Y. S. C. R. [T. & C.], 418.)

Prior to 1869, the firm of A. D. Putnam & Co. was composed of Avery D. Putnam and Herman Henneberger; in that year they entered into an agreement with defendant Hyde, by and under which the latter invested or deposited with the firm $1,500, which was placed to the credit of Frederick Hyde, defendant's son; defendant Hyde was to share one-third of the profits at the end of the year. At the end of the year his share of the profits was settled at $500, which sum was placed to the credit of Frederick. A new agreement was then made in writing as follows:

" Agreement made the second day of May, 1870, between (Avery D. Putnam, H. Henneberger) A. D. Putnam & Co. and George M. Hyde, the latter to invest $2,000 in the produce commission business, established at 68 Pearl street, New York, on trial for one year, his son, Frederick Hyde, to be employed and draw a salary of $520 per annum, in weekly payments of ten dollars each, and G. M. Hyde to share one-third the profits during said time — to be settled half-yearly — then, if agreeable to both parties, shall be admitted as a partner in the business by making a further investment, if necessary."

There was no profits at the end of six months, and Hyde never received anything by way of interest money for this investment. He never interfered in the affairs of the firm or exercised any control.

At the close of the evidence, the counsel for defendant Hyde asked the court to direct a verdict in his favor, which

was denied. The court, upon request of plaintiffs' counsel, directed a verdict in favor of plaintiffs, to which defendant's counsel excepted. A verdict was rendered accordingly.

*Roger A. Pryor* for the appellant. A loan of money to a firm, with an agreement for compensation from the profits of the business, does not *per se* constitute the lender a partner as to the creditors of the firm. (*Cox* v. *Hickman*, 8 H. L. C., 268; *Holme* v. *Hammond*, 2 Eng. R., 125; *Shaw* v. *Galt*, 16 Irish C. L., 357; *Berthold* v. *Goldsmith*, 24 How. [U. S.], 536; *Fitch* v. *Hall*, 25 Barb., 13; *Smith* v. *Wright*, 5 Sandf., 113; *Merrick* v. *Gordon*, 20 N. Y., 93; *Heimstreet* v. *Howland*, 5 Denio, 68; *Clark* v. *Gilbert*, 32 Barb., 581; HUNT, J., in *Leonard* v. *Telegraph*, 41 N. Y., 568; 2 Kent's Com., 25, note *b;* Pars. on Part., chap. 6, §§ 2, 6, and notes [2d ed.]; *Vanderburgh* v. *Hull*, 20 Wend., 71; *Gibson* v. *Stone*, 43 Barb., 285; *Lewis* v. *Greider*, 49 id., 606; S. C. on appeal, 51 N. Y., 231, 236; *Muzzy* v. *Whitney*, 10 Johns., 226; *Ogden* v. *Astor*, 4 Sandf., 311; *Conklin* v. *Barton*, 43 Barb., 435; *Burckle* v. *Eckhart*, 3 N. Y., 132; *Ross* v. *Drinker*, 2 Hall, 447; Story on Part. [Grey ed.], § 49 and note 2, p. 83; *Williams* v. *Souter*, 7 Clarke [Iowa], 435; Bis. on Part., 12–15; Coll. on Part., §§ 25, 28, 31, 33, 34; *Dry* v. *Boswell*, 1 Camp., 330; *Loomis* v. *Marshall*, 12 Conn., 77, 78; *Bucknam* v. *Burnam*, 15 id., 73; *Burckle* v. *Eckart*, 1 Denio, 337; *Perrine* v. *Hankinson*, 6 Halst., 181; *Mair* v. *Glennie*, 4 M. & S., 240; *Wish* v. *Small*, 1 Camp., 331; *Dixon* v. *Cooper*, 3 Wils., 40; *Benjamin* v. *Porteus*, 2 H. Bl., 590; *Withington* v. *Herrick*, 3 M. & P., 30; *Rice* v. *Austin*, 17 Mass., 197, 206; *Turner* v. *Bissell*, 14 Pick., 192, 195; *Wilson* v. *Whitehead*, 10 M. & W., 503; *Gabriel* v. *Evill*, 9 id., 297; *Ex parte Turguand*, 2 M. & D., 340; *Bullen* v. *Sharp*, L. R. [1 C. P.], 86; *Parker* v. *Fergus*, 43 Ill., 438; *Denny* v. *Calbot*, 6 Metc., 82; *Reynolds* v. *Toppen*, 16 Mass., 370; *French* v. *Price*, 24 Pick., 13; *Gibbons* v. *Wilcox*, 2 Stark., 43; *Holmes* v. *O. C. R. Co.*, 5 Gray, 58.) One who has a share in the profits of a firm, as compensation for wages,

is not a partner. (*Cattskill Bk.* v. *Gray*, 14 Barb., 471; *Hodgman* v. *Smith*, 13 id., 302; *Bigelow* v. *Elliott*, 1 Clif., 28.)

*C. Van Santvoord* for the respondents. Defendant Hyde was responsible as a general partner, as to third persons, although it had been expressly agreed with the members of the firm that he should not be so as between themselves. (*Manh. Brass and M. Co.* v. *Sears*, 45 N. Y., 797, 799, 801; *Parker* v. *Canfield*, 37 Conn., 250, 269, 270; *Berthold* v. *Goldsmith*, 24 How. [U. S.], 536, 542, 543; *Cushman* v. *Bailey*, 1 Hill, 526; *Cattskill Bk.* v. *Gray*, 14 Barb., 477; *Biglow* v. *Elliott*, 1 Clif., 28; Add. on Con., 747, and cases cited.)

FOLGER, J. At the trial, each party asked the court to direct a verdict in his favor. Each thereby conceded, that there could be no dispute upon any question of fact. Each thereby conceded, that there was left for decision only a question of law, and that it arose upon a settled and uncontradicted state of facts.

Taking the view of the testimony the most favorable for the appellant, the facts are these: In 1869, one Putnam and one Henneberger were partners in business, under the firm name of A. D. Putnam & Co. In that year, the appellant invested or deposited with that firm $1,500. This sum was credited on its books to Fredk. Hyde, the son of the appellant. For this sum the appellant was to share in the profits of the business of the firm. His share was to be one-third, and demandable by him at the end of the year. At the end of the year, his share of the profits was $500. This sum was also placed to the credit of Fredk. Hyde. Then, in 1870, the appellant loaned to the firm for one year the original sum of $1,500 and the $500 of profits, thus making $2,000. In consideration of this loan, the firm agreed to hire Fredk. Hyde as clerk, at ten dollars per week, for the year; to pay the appellant one-third of the profits, which were to be settled

half-yearly ; and, at the end of the year, to take him in as a partner, if the firm and he should feel satisfied, on his making further investments and putting in more capital. Though it is nowhere in the testimony so stated in terms, yet it is fairly to be inferred that the $2,000 was loaned to ·be used in the business, and that if at the end of the year the appellant did not become an ostensible partner he was to be repaid, out of the concern, the $2,000; but without interest, strictly as such. The appellant never interfered in the affairs of the concern, nor exercised any control in the business. At the end of the first six months there were no profits of the business. The appellant never received anything for his $2,000 ; nor anything by way of interest money.

The prominent and important facts are, that he loaned the firm a sum of money to be employed as capital in its business, and that, therefor,.he was entitled to have and demand from it one-third of the profits of its business every half-year. In my judgment, there results from. this, that Putnam and Henneberger. making use of that money as capital in that business, used it there. for the benefit of the appellant. Because any return to him, for the loan to them, must come from the use of it. If not used so that profits were made, he got no return. Further: that he had an interest in the profits, which, while they were anticipatory, was.indefinite as to amount, but when they were realized, was measured and specific as to share. Further: that his interest in them was in them as profits : that is, that he had a right on the lapse of every six months, though having no property in the whole capital, to have an account taken of the business, and a division made of the profits then appearing. (*Ex parte Hamper*, 17 Vesey, 403.) (So it is said in. *Everett* v. *Coe*, 5 Denio, 182: " If he is to be paid out of profits made, then he has a direct interest in them. And see *Ogden* v. *Astor*, 4 Sandf., 321, 322.) That he had this right to an account and a division at other time than at the end of each six months, if at any other time the exigencies of the concern, as the dissolution of the firm by death of one partner, or other reason, required an account to be taken.

He had that interest in the profits, as profits, because he could claim a share of them specifically, as they should appear on each six months, or other accounting of the business of the term then ended, and could then have and demand payment of his share. By the terms of his contract with the firm, if it be upheld as made, he was interested in and affected by the results only of the year, as ascertained at the end of each six months. It would not affect him in the right to account, though the business of a previous year had been disastrous. If either six months' business should yield a profit he could insist on payment to him of one-third thereof; and could demand that an account be had of the business of any six months to ascertain if there had been profit. It was one-third of the profits that he was to have, and not a sum in general, equal to that one-third. So that he was to take it as profits, and not as an amount due; not as a measure of compensation, but as a result of the capital and industry.

The learned counsel for the appellant states the question of law to be this: Does a loan of money, with an agreement for compensation from the profits of the business, *per se* constitute the lender a partner *quoad* the creditors of the firm? Is this statement of it correct? Does the phrase " compensation from the profits " fully meet the case? Does it fully present the fact that by the agreement the appellant obtains an interest in the profits, as such, and a right to insist upon an accounting, and a division thereof half-yearly? With this supplement, the question for decision is as stated by him. I am not to say what I think ought to be the answer to it, was this a case of first impression. I am to declare what I ascertain to be the answer already given by the law in this State, as it has been settled and declared by the authorities. The argument of the learned counsel is very ingenious, and very forcible when considered in reference to what should be the proper rule, and what the true reasons upon which a rule should be founded. Yet, if it is found that by a long course of decisions, or by long acquiescence in, and adherence to, a rule some time ago authoritatively promulgated, there has

been established a principle of commercial law upon which the community has acted, it is the duty of the courts to adhere thereto, leaving it to the law making power to find a remedy, if remedy be needed, in a positive alterative enactment. In England this has been done, and by an act of Parliament an important change has been made. (28, 29 Vic., chap. 86.)

In the first place, it matters not that the defendants meant not to be partners at all, and were not partners *inter sese.* They may be partners as to third persons notwithstanding. (*Manhattan Brass Co.* v. *Sears*, 45 N. Y., 797.) And this effect may result, though they should have taken pains to stipulate among themselves that they will not, in any event, hold the relation of partners. Among the reasons given is this, whether it be strong or weak: that whatever person shares in the profits of any concern, shall be liable to creditors for losses also, since he takes a part of the fund, which in great measure is the creditor's security for the payment of the debts to them. (*Waugh* v. *Carver*, 2 H. Bl., 235, citing *Grace* v. *Smith*, 2 Black., 998.) The doctrine took its rise in the decisions in these cases. And commenting upon them, the text writers, who have presented most forcible criticisms upon it, say: " The principle laid down by De Gray, C. J., in *Grace* v. *Smith* has served as the foundation of a long line of decisions which cannot now be overruled by any authority short of that of the legislature ; " " and in all cases in which there is no incorporation, nor limited liability, it must still be regarded as binding on the courts." (Lindley on Part., *36.) " The doctrine is completely established upon the very ground asserted in *Grace* v. *Smith.*" (Story on Part., § 36, note 3.) And so Mr. Parsons, in his book on Partnership, quoting Lord Eldon, *Ex parte Hamper:* " But if he has a specific interest in the profits themselves, as profits, he is a partner," and adds, " undoubtedly he is ; every principle of the law of partnership leads to this conclusion." He contends, however, that the specific interest in profits which is to make a person a partner, must be a proprietary interest in

them, existing before the division of them into shares. See also
3 Kent's Commentaries (* 25, note *b*), where it is said : " The
test of partnership is a community of profit; a specific inter-
est in the profits, *as profits*, in contradistinction to a stipula-
ted portion of the profits as a compensation for services."
The courts of this State have always adhered to this doctrine
and applied or recognized it in the cases coming before them.
In *Walden* v. *Sherburne* (15 J. R., 409, in 1819) SPENCER, J.,
delivering the opinion of the court, says : " No principle is
better established than that every person is to be deemed in
partnership, if he is interested in the profits of a trade, and
if the advantages which he derives from the trade are casual
and indefinite, depending on the accidents of trade." (See,
also, *Dob* v. *Halsey*, 16 J. R., 34, in the same year.) The
principle is recognized in *Chase* v. *Barrett* (4 Paige, 148) by
WALWORTH, Ch., in 1833; by the Court of Errors, per
WALWORTH, Ch., in 1837, in *Champion* v. *Bostwick* (18
Wend., 175); by the Supreme Court, in 1841, per COWEN, J.,
in *Cushman* v. *Bailey* (1 Hill, 526); and again, in 1848, per
BEARDSLEY, Ch. J., in *Everett* v. *Coe* (5 Denio, 180); by the
Superior Court of the city of New York, per SANDFORD, J.,
in *Oakley* v. *Aspinwall* (2 Sandf., 7–21); by the present
Supreme Court in repeated decisions, of which, see *Catskill
Bank* v. *Gray* (14 Barb., 471); *Hodgman* v. *Smith* (13 id.,
302); by the Court of Appeals, per PECKHAM, J., in *Man-
hattan Brass Co.* v. *Sears* (45 N. Y., 797); per LEONARD, C.,
in *Ontario Bank* v. *Hennessey* (48 N. Y., 545, 552); per
GARDINER, J., in *Burckle* v. *Eckhart* (3 N. Y., 132, 138).

It is not too much to say, that the limited partnership act
(1 R. S., 764) is a legislative and practical recognition of this
rule of commercial law. Indeed, if it shall be held that such
a contract as that of the appellant does not make him a part-
ner as to third persons, there is little or no need of that act.
The situation of the special partner, is more onerous than that
of the appellant, under such a ruling. The first may lose his
capital invested, as well as profits, by the same being absorbed
in the payment to creditors. The latter may lose his antici-

pated compensation for his money loaned, but his position is quite as favorable to him as that occupied by creditors, for the recovery of his money advanced. Neither may interfere, to transact business or to sign for the firm, or to bind the same. Both may advise as to the management; both may examine into the state and progress of the partnership concerns; the special partner from time to time, the appellant at the end of every six months. In one respect the special partner is better placed; he may stipulate for legal interest on his capital invested, as well as for a portion of the profits. The appellant, if he bargained for profits in addition to interest, might be in conflict with the usury act. It is evident that most of the conveniences and advantages of the limited partnership act, and some which it does not give, might be obtained by a loan of money, with a stipulation for compensation for its use, by a share of the profits, if thereby a partnership is not created as to third persons. This is not decisive as to what the law is; but it is strongly indicative of the view of the law held by the revisers and by the legislature.

There have been from time to time certain exceptions established to this rule in a broad statement of it; but the decisions, by which these exceptions have been set up, still recognize the rule that, where one is interested in profits, as such, he is a partner as to third persons. These exceptions deal with the case of an agent, servant, factor, broker or employe, who, with no interest in the capital or business, is to be remunerated for his services, by a compensation from the profits, or by a compensation measured by the profits; or with that of seamen, on whaling or other like voyages, whose reimbursement for their time and labor, is to finally depend upon the result of the whole voyage. There are other exceptions, like tenants of land, or a ferry, or an inn, who are to share with the owners in results, as a means of compensation for their labor and services. The decisions which establish these exceptions do not profess to abrogate the rule — only to limit it.

It is claimed by the learned counsel for the appellant, that

the rule as announced in *Grace* v. *Smith* and *Waugh* v. *Carver*, has been exploded, and another rule propounded which shields the appellant. He is correct so far as the courts in England are concerned. *Cox* v. *Hickman* (8 H. of L. C., 268, and 9 C. B. [N. S.], [99 E. C. L.], 47), and *Bullen* v. *Sharp* (L. R. [1 Com. Pl.], 86) affirm, that while a participation in the profits is cogent evidence, that the trade in which the profits were made, was carried on in part for or in behalf of the person claiming the right to participate, yet, that the true ground of liability is, that it has been carried on by persons acting in his behalf. Those cases were very peculiar in their circumstances. After the judgments rendered in them, the Parliament deemed it needful to enact, that the advance of money by way of loan to a person in trade, for a share of the profits, should not, of itself make the lender responsible as a partner. (28, 29 Vic., chap. 86, as cited in Parsons on Part., * 92, note *t.*) If the decisions in the cases cited went as far as is claimed, it would seem that the act was supererogatory. It is suggested, however, by KELLY, C. B., in *Holme* v. *Hammond* (L. R. [7 Exch.], 218), that the effect of the statute is, that the sharing in the profits, by a lender, shall be no evidence at all of a partnership. At all events, those decisions have been accepted, in England, as settling the rule, as above stated. (See case last cited and cases therein referred to.)

Without discussing those decisions and determining just how far they reach, it is sufficient to say that they are not controlling here; that the rule remains in this State as it has long been, and that we should be governed by it until here, as in England, the legislature shall see fit to abrogate it.

The references upon the appellant's points do not show that the courts of this State have yet exploded the rule I have stated. I have consulted all the authorities cited, (save a few of which I had not the books, or as to which there was a miscitation), and I do not find that the rule is questioned, further than to apply to the facts of the particular case, some

one or more of the exceptions to the rule which I have stated to exist.

I am of the opinion that the judgment appealed from should be affirmed with costs.

All concur, except CHURCH, Ch. J., dissenting.

Judgment affirmed.