### Trask *v.* Hazazer.

*(Superior Court of New York City, Special Term.* August 3, 1888.)

1. CONTRACTS—INTERPRETATION—LOAN—INTEREST.

Plaintiff agreed in writing, in order to enable defendant "to further increase his business," to "furnish him money" up to a certain amount, for which plaintiff was to receive a specified percentage of the profits, "instead of interest." The business was conducted at a loss for several years, during which time plaintiff furnished various sums, portions of which were repaid him at different times, but on the termination of the business the balance due him exceeded the amount agreed to be furnished. *Held,* that he was not entitled to interest on the excess, as all sums were advanced in pursuance of the agreement.

2. PARTNERSHIP—WHAT CONSTITUTES—AS BETWEEN PARTIES.

Such contract did not constitute a partnership between plaintiff and defendant, though it contained a clause regulating the amount to be drawn out of the business by defendant for personal expenses, nor can a partnership be shown, as between the parties, by evidence that plaintiff assisted in conducting the business.[1]

3. USURY—WHAT CONSTITUTES.

An action for the balance furnished by plaintiff cannot be defended on the ground of usury from the fact that plaintiff was to be paid a certain share of the profits in lieu of interest on the money advanced, where no profits were realized, as the amount of the expected share was indeterminate.

On trial before referee.

---

[1] Concerning the general subject of what constitutes a partnership, see Greend v. Kummel, (La.) 5 South. Rep. 555, and cases cited; Runnels v. Moffat, (Mich.) 41 N. W. Rep. 224, and note; Brown v. Watson, (Tex.) 10 S. W. Rep. 395, and note; Galway v. Nordlinger, post, 649, and note.

Action by Asa G. Trask against Edgar W. Hazazer, for money advanced. *William B. Ellison*, for plaintiff.  *James B. Lockwood*, for defendant.

LARREMORE, Referee.  It is conceded that the original sum advanced by plaintiff to defendant was so advanced in pursuance of the following agreement in writing, which was orally assented to by the parties: "NEW YORK, Oct., 1882.  In order to enable Mr. E. W. Hazazer to further increase his business, I hereby agree to furnish him money as may be required, up to $1,000, and instead of interest A. G. Trask is to receive 25 per cent. of the profit, until he shall have received $250, and 10 per cent. after that amount has been paid to him.  Mr. Hazazer shall not draw from the business for personal expenses over $1,000 per annum.  This arrangement may be discontinued by either party by giving 30 days' notice."  Between October, 1882, and October, 1885, plaintiff accordingly advanced various sums, which, in the aggregate, greatly exceeded $1,000, but I think it was the mutual intention that all of such moneys should be furnished and accepted under the same arrangement.  Certainly no new agreement was made as to amounts in excess of $1,000, and it does not appear that plaintiff, in his demands for payment and other conversations with defendant prior to November, 1885, made any distinction between different portions of the debt, or treated it otherwise than as a general balance.  The agreement does not provide that the original $1,000 shall not, in any event, be exceeded.  A fair construction of this instrument, in the light of the parties' own interpretation of it as shown by their acts, is that plaintiff agreed and was bound to make advances up to $1,000, but that he could not be compelled to go above that sum.  This, of course, would not prevent his furnishing more money if he chose, and, in the absence of any special arrangement as to the excess, it must be presumed to have been furnished under the only business relation existing between the parties, which by its very terms was a continuing one.  The materiality of this question is on the right to recover interest.  It is conceded that between October, 1882, and October, 1885, plaintiff advanced various sums, and was repaid at different times various portions of the balance owed to him; and that in October, 1885, when all relations between the parties ceased, the balance in plaintiff's favor was $1,818.44.  It is also conceded that during all this period the business was conducted at a loss, and that no profit was realized.  As all sums were advanced in pursuance of the agreement, plaintiff is no more entitled to interest during the existence of the business relation, on the excess over $1,000, than on such original sum itself.

Defendant endeavors to entirely defeat plaintiff's recovery on the ground that the agreement above quoted constituted the parties copartners; that the plaintiff's money was, therefore, at the risk of the business, and that, as it was lost in trade, no cause of action exists.  The cases of *Waugh* v. *Carver*, 2 H. Bl. 235; *Brass Co.* v. *Sears*, 45 N. Y. 797; *Leggett* v. *Hyde*, 58 N. Y. 279; *Hackett* v. *Stanley*, 6 N. Y. St. Rep. 266,—are relied upon, because therein participation in the profits is made the essential test of partnership.

In the *first* place it may be said that several cases in the court of appeals later than *Leggett* v. *Hyde, supra*, have certainly narrowed the scope of its general propositions.  Especially since the decision in *Curry* v. *Fowler*, 87 N. Y. 33, it is difficult to determine how much of the doctrine of *Waugh* v. *Carver* and *Leggett* v. *Hyde* is left as a part of the jurisprudence of this state.  The probability is that, even if the rights of firm creditors were involved, the case at bar would be distinguished in principle from *Leggett* v. *Hyde* under such later decisions.  *Richardson* v. *Hughitt*, 76 N. Y. 55; *Eager* v. *Crawford*, Id. 97; *Burnett* v. *Snyder*, Id. 344; *Cassidy* v. *Hall*, 97 N. Y. 159; *Curry* v. *Fowler, supra.*  Here the participation in the profits is expressly stated to be "instead of interest."  The money is furnished "in order to enable Mr. E. W. Hazazer to further increase his business," and the agreement

is "to furnish him money." The clear intention of this instrument as a whole is, in my opinion, to provide for a loan to the defendant, to be used in a business in which he had the sole proprietary interest, and plaintiff's share of the profits is to be construed merely as compensation for such loan. The clause regulating the amount to be drawn by defendant for personal expenses, while unusual in an instrument which concerns a loan, is certainly not in itself sufficient to create a partnership. In fact, an obvious reason for the insertion of such provision, which is perfectly consistent with the theory of a loan, is that the lender would naturally wish to limit the amount of profits to be drawn for personal expenses, so that enough should remain to pay his (the lender's) share of such profits as well as provide by accumulation for the ultimate repayment of the principal.

But *secondly, Leggett* v. *Hyde,* as well as all the other cases above cited, were suits brought by outside creditors to charge an alleged concealed partner with the payment of firm debts. The reason for the rule that participation in the profits shall be taken as the test of partnership is given in *Burnett* v. *Snyder, supra,* as follows: "He who takes a moiety of the profits indefinitely shall, by operation of law, be made liable to losses, if losses arise, upon the principle that by taking a part of the profits he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts." Clearly there could be no justification for the adoption of such a test of partnership in a suit between the alleged copartners. The principle is one that exists simply for the protection of creditors, and necessarily it may often happen that two persons are partners as to the outside world, but not partners as to one another. As between the parties themselves, the only criterion of partnership is their actual intention. *Salter* v. *Ham,* 31 N. Y. 321. Such intention, as above shown, is not, in the present case, to be drawn from the instrument itself, and the evidence convinces me that neither the plaintiff nor the defendant intended to become partners, or believed that such agreement would constitute them such. The plaintiff expressly denies that he ever agreed to enter a copartnership, and that he ever made any agreement other than the written one. The defendant does not contradict this, nor does he testify to any specific conversation or occasion when the plaintiff proposed or assented to any other arrangement. He further made one remark on the stand which seems inconsistent with the idea that he could have looked upon the plaintiff as his partner. He testifies that in 1884, when he had under consideration the purchase of an engine, as things were looking encouraging, he was under the impression that plaintiff's son, Leland, would take an interest in the business. Why should defendant desire or suppose that plaintiff's son would become his partner if he was already in partnership with plaintiff himself, the fountain head of capital of the family? There are other points in defendant's evidence, which it is unnecessary to specify here, which bear out plaintiff's theory of the case, and satisfy me that defendant's claim of a partnership was an after-thought, and probably asserted only after he had taken the advice of counsel.

Defendant further shows that plaintiff wrote a number of letters in his (defendant's) name; that he made a large portion of the entries in the invoice book; and that in other ways he took a practical interest in and assisted in the conduct of the business. Evidence of this character might have value, if this were a suit against the present plaintiff by a creditor of the concern who was endeavoring to estop plaintiff by his acts from denying a partnership. But these facts have little significance in the case at bar, because here the thing to be established is not an estoppel *in pais,* but the actual intention of the parties. Plaintiff might have done a hundred things which to outsiders, ignorant of the true relation, would subject him to misconstruction. But no acts performed by him in connection with the business could have deceived the defendant, because the latter was aware of the actual *status* of both par-

ties. Evidence of plaintiff's acts might be relevant in a suit between the alleged partners if there were a substantial dispute as to the nature of the agreement. If, for instance, the defendant testified to the making of a certain contract which would constitute the parties partners, and the plaintiff testified to an entirely different one under which the parties would not become partners, the court might be obliged to rely almost entirely upon the subsequent acts of the parties for the corroboration or the discrediting of one story or the other, and this for the determination of the question which of the alleged agreements was the one actually made. But even here the materiality of such subsequent acts would be only in the aid they afforded in ascertaining what the real contract was. Certainly, as between the parties, a copartnership cannot be created by estoppel.

Perhaps I ought to notice briefly, in closing, the defense of usury, also raised in the answer. The learned counsel for defendant does not refer to this point in his brief; probably he did not seriously rely upon it. In any event, I think it would be sufficient to say that, as the statute against usury is highly penal in its nature, courts will not indulge in violent presumptions for the sake of giving it practical force. Usury consists in an agreement to accept more than 6 per cent. per annum as compensation for a loan. In the case at bar the plaintiff agreed to accept a share of the profits in lieu of interest on his loan. The evidence shows that no profits were ever realized, and in the nature of things the expected compensation for such loan was at the time of the arrangement indeterminate and contingent. Under such circumstances, no agreement for a definite sum or a fixed rate could be presumed, and there is therefore absolutely nothing upon which to found such defense. The plaintiff is entitled to judgment against defendant for $1,820.01, with interest thereon from November 1, 1885.