JAMES GRAY, as Trustee in Bankruptcy of NATHAN CORNMAN and ABRAHAM KENNEDY, Bankrupts, Appellant, *v.* SAMUEL ROSENDORF and Others, Individually and as Administrators, etc., of DANIEL ROSENDORF and Mrs. HUGO D. ROSENDORF, Respondents.

Second Department, February 8, 1918.

Partnership — advance of moneys secured by a mortgage to further enterprise to develop lands and share in profits — when such agreement constitutes copartnership — bankruptcy — evidence — testimony of admitted perjurers — new trial.

Profits promised to a stranger to the business of a copartnership for the use of money to be used in the partnership do not make him a partner.

But where such third person and the members of the partnership draw articles in which they expressly say that they form a partnership to develop and improve certain real estate and each contributes land for the sites of buildings to be erected and each agrees to pay a share of the expenses, debts and obligations and is to receive an equal part of the proceeds and income, and the members of the former partnership are expressly authorized to represent and act for said third person, a partnership exists for the specific enterprise in spite of the fact that the repayment of the money contributed by the person joining in said enterprise is secured by a mortgage on the lands.

Where the members of the prior partnership, on their bankruptcy, testified that a conveyance of their interest in said lands to the new partner participating in the real estate enterprise was made in good faith, but after their discharge and on the appointment of a new trustee in bankruptcy testified that their conveyances to the new partner were designed to defraud creditors, so that they are confessed perjurers, their testimony in a suit brought by the trustee in bankruptcy to set aside the conveyance is useful only for the purpose of discovery or explanation of independent facts.

On all the evidence, *held*, that there must be a reconsideration of the case in view of the present holding that the agreement of the parties constituted a partnership and that a new trial is necessary.

APPEAL by the plaintiff, James Gray, as trustee, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 3d day of May, 1916, upon the decision of the court after a trial at the Kings County Special Term.

An appeal is also taken, as stated in the notice of appeal,

from the decision of the court and from the findings of fact and conclusions of law.

*Alvin Theo. Sapinsky* [*Abraham H. Simon* with him on the brief], for the appellant.

*Peter P. Smith* [*John F. Clarke* and *Max Altmayer* with him on the brief], for the respondents.

THOMAS, J.:

Nathan Cornman and Abraham Kennedy and Charles Cornman were copartners. Charles retired, and the others conveyed on March 16, 1908, to Samuel Rosendorf, defendant, and his father Daniel, now deceased, by several deeds, all real estate held by them as copartners or individually, and on April 16, 1908, Cornman and Kennedy were adjudged bankrupts upon a petition filed against them on March 30, 1908. No assets were found, and on August 11, 1909, they were discharged after the usual inquiry, in which Kennedy, Cornman and Samuel Rosendorf testified to the good faith of the conveyances. On July 15, 1915, the proceedings were reopened and later the present trustee was appointed. The revival of the bankruptcy proceedings was based on statements of the bankrupts to the effect that the conveyances to the Rosendorfs were fraudulent and that Samuel Rosendorf was a partner of the bankrupts in the ownership and improvement of six lots on the northeast corner, and six lots on the southeast corner of Livonia avenue and Chester street. The questions are: (1) Whether Samuel Rosendorf was a copartner with Cornman and Kennedy as to the Livonia-Chester street lots, so as to make them appropriable to the debts of the firm; (2) whether the conveyances were fraudulent as to creditors. Inasmuch as the present testimony of Cornman and Kennedy shows that they are perjurers now, or were such in the bankruptcy proceedings, their statements are useful only for the purposes of discovery or explanation of independent facts. The principal fact so disclosed is that there was an agreement made March 28, 1907, between them and Samuel Rosendorf, which determines whether they were or were not copartners. The introductory stipulation in it is so wide in scope and so direct in expression that by itself it permits but a single

conception, viz., that the three men became copartners for the purpose of building twelve houses on the land; that the interest of each should be an undivided one-third part; that Rosendorf should contribute " at least " $19,000 in such installments as Cornman and Kennedy " may deem proper during the construction of the said buildings," and that Cornman and Kennedy should contribute " as much more as may be necessary," not exceeding $19,000. The next sentence precisely fits the provision for a partnership by the stipulation that each party shall bear " an equal one-third part of all the expenses thereof, and * * * all debts or obligations incurred therein, and each to receive a one-third of the proceeds thereof or income therefrom." Thus far a partnership agreement in perfection appears, limited, however, to a single adventure. The next paragraph deals with the event of the completion of the buildings. Then Rosendorf should receive conveyance of an undivided one-third interest in the premises, and satisfy a mortgage thereon given at the date of the agreement by Cornman and Kennedy to secure the payment of $19,000. As between the three men, the agreement is that the consummation of the partnership undertaking, that is, the construction of the buildings, followed by conveyance to Rosendorf of one-third interest, shall earn the discharge of the mortgage given to secure the conditional payment of $19,000 capital contributed by Rosendorf. Pending such completion, each man remains a partner, with his contribution at the risk of the venture, save that if it fail of reaching the stage of completed construction the interests of Cornman and Kennedy must bear Rosendorf's loss to the extent of $19,000. But at all times, before or after completion, Rosendorf promises that he will bear one-third part of the expenses " thereof," the quoted word referring to the construction of the buildings, and the same proportion of all debts or obligations incurred " therein," the last quoted word referring to the enterprise, and it is stipulated that he shall receive one-third of the proceeds and income, which means the land and buildings, the increment in value, and rents, interest and the like. There are five further provisions, (1) that " this partnership " shall not conflict with the private and disconnected business of either party, and shall relate only to the premises named;

(2) that Cornman and Kennedy " will do and perform any and all acts necessary and proper for the speedy completion of said building; " (3) that the agreement shall continue until the premises " shall have been completed and sold or equitably divided between the parties," and shall thereupon cease; (4) that Cornman and Kennedy are empowered to do any act and to conclude any necessary instrument without Rosendorf's written consent; (5) that Rosendorf shall receive one-half of the " cash invested by him," which may be received by Cornman and Kennedy on the sale of the premises, and that the balance of the " proceeds and amount invested realized on such sale, including mortgages, shall be divided in such manner as may be deemed proper." If Rosendorf should receive one-half of $19,000, it would make his contribution equal to that of each of his partners, whose maximum contribution was stated at $19,000. The balance of the proceeds would then be divided according to the interests of the partners. The ensemble of the agreement shows that in the construction of the building the parties were partners equal in interest and usufruct, and that to that end each was pledged to the expense; that upon completion of the buildings Rosendorf should have one-third of the premises only, but not his mortgage, and that if at any time there should be sale, there should be an adjustment, whereupon the agreement would cease. The mortgage referred to in the agreement also was dated March 28, 1907, and accords with a building agreement of the same date, both not filed or recorded until January 11, 1908. In form they are a building loan agreement and mortgage. Both recite a bond. Another important instrument, dated and executed the same day, supplements the documentary evidence of the acts and relations of the parties. It is a deed from Rosendorf to Cornman and Kennedy of his interest in the premises, which had been conveyed to the three parties by deed dated August 23, 1906, Rosendorf contributing $1,000 of the purchase money. That indicates that the parties did not intend to be tenants in common. Does such history show that Rosendorf was a partner as to creditors of the partnership? I repeat that the salient terms of the agreement are that the parties combined to build houses on land in which each had a one-third ownership, which interest should continue in

the same proportion, with liability for debts, expenses and obligations in the same ratio, with similar right to income, the land itself or proceeds, which must include profits, if any there should be, with equal contribution of money for capital, if necessary, save that in the first instance Rosendorf should contribute as much as the possible maximum of the other two; to be equalized, however, from the first avails, if sufficient. But dominating all that was the right of Rosendorf to enforce the mortgage given for the $19,000 contribution conditionally upon his not receiving conveyance of one-third of the premises upon the completion of the buildings. Does Rosendorf's right to enforce that mortgage overlie the rights of creditors, whom he agreed to pay at least to the extent of one-third of their claims? Cornman and Kennedy are authorized to go forward and buy and to build. In terms it is expressed that there may be debts and obligations incurred. They are made agents to do all things necessary for the achievement of the undertaking, and defendant agrees that he will pay one-third of the debts. Rosendorf cast all his contribution into the fortune of the enterprise with the single chance of salving some portion by enforcing his mortgage for $19,000, which was not necessarily his entire contribution, in case he did not receive conveyance after completion of the buildings. If he did receive such conveyance, his whole interest partook of the peril of the enterprise. If he did not receive it, he had a lien to the extent of $19,000 on all the capital, which was superior to all rights of his copartners, but not to the rights of creditors. But the enforcement of the mortgage did not terminate his interest in the assets. If the property showed an excess over the mortgage, he was entitled to share in it, after satisfying the contributions of the other partners. If, then, the project went to successful accomplishment, Rosendorf would get one-third of the profits in the whole of the property, and he agreed to pay one-third of the debts and obligations, and so necessarily one-third of the losses, if there should be such rather than profits. Rosendorf was not assured that he would receive what he contributed. If the buildings were completed and an undivided one-third conveyed to him, there was the chance of a loss or of a gain, and whether the buildings were or were not completed he was always entitled to a one-third

interest in the premises.  Until the relation ended by the completion of the houses and conveyance of his share to Rosendorf, or adjustment on sale of the property, there was absolute community of interest in the fate of the undertaking, principal, loss, or profit, or income, with such protection to Rosendorf as the mortgage afforded, and the acting and patent partners were authorized by that relation as well as by the expression of the agreement to create obligations for the purposes of the undertaking.  The completion of the buildings would fulfill the project; nothing would then remain save to make division by the simple method of conveying to Rosendorf an undivided one-third of the land and adjusting the usual equities obtaining among partners.  Rosendorf's position must be (1) that he could have one-third of the capital; (2) one-third of all income; (3) one-third of the profit arising from increment in value or from proceeds of sale over cost and maintenance; (4) that he was not liable for any demands for the labor or material that the building involved, or that entered into the creation of the improvement of property in which he shared.  For instance, he authorized Cornman and Kennedy to buy bricks for the building, if necessary. Assume that they did so.  Out of the bricks and other material in whole or in part grew the houses, in which he had a one-third interest, from which might issue a profit to him.  And yet his position is that he could take, not only one-third of the houses, but all of them, and divert them from the material-men who had not filed liens, and be himself quit of all obligation, and the reason given is that if one-third of the houses were not conveyed to him he could enforce security for his contribution to the capital.  It remains to be considered whether decision sustains such position.  It may be remarked that the court should hesitate to decide that the parties were not copartners, when the foremost term of their agreement declares that they are such.  *Leggett* v. *Hyde* (58 N. Y. 272) introduces a series of decisions.  Hyde agreed with the members of a firm " to invest " money in its produce business in which his son was to be employed " on trial for one year," and to share one-third of the profits during such time, to be settled half-yearly — " then, if agreeable to both parties, shall be admitted as a partner in the business by making a

further investment, if necessary." Hyde was deemed a partner as to creditors of the firm. The opinion states: "The prominent and important facts are, that he loaned the firm a sum of money to be employed as capital in its business, and that, therefore, he was entitled to have and demand from it one-third of the profits of its business every half-year." The opinion presents as a prominent consideration "that whatever person shares in the profits of any concern, shall be liable to creditors for losses also, since he takes a part of the fund, which in great measure is the creditor's security for the payment of the debts to them." There was no stipulation that Hyde's investment should be returned to him, but that would result if it was not lost in the venture. Then follow a number of decisions to the effect that an arrangement, whereby money contributed to an enterprise for the use of which the lender was to have a share of the profits, merely provided a method of compensation, but did not create a partnership. The cases are considered and distinguished in *Hackett* v. *Stanley* (115 N. Y. 625). There Stanley loaned Gorham money, for the payment of which with interest Gorham gave his note, secured by a policy of life insurance and a chattel mortgage, and in consideration of that and for services Stanley was to render in securing sales in the business, and for further money he should at his option advance, Gorham agreed to divide with him the yearly net profits of the business in which the money should be used and render quarterly statements. Either party could withdraw his advance with interest, and Gorham, as the active man, was allowed a salary. It was noticed by the court that the services promised (wherein the case at bar is different), moneys advanced and to be advanced, constituted consideration for the agreement for the division of profits. It was decided that the liability did not depend upon the intention of the parties in making the contract to shield themselves from liability; that the profits were not a measure of compensation, but for a proprietary interest in the profits as compensation for money advanced and time and services bestowed, and that the parties were partners as to third persons. In *Demarest* v. *Koch* (129 N. Y. 218) Spaulding agreed to secure title to a piece of land subject to a mortgage, and also to procure a builder's loan for $50,000 thereon and

to erect two houses to be finished by a certain day. Koch agreed to furnish one-half of the money in excess of the building loan necessary to construct the building. Upon completion Spaulding agreed to convey to Koch one of the houses, " subject to the lien of an equal half of the two mortgages; or, in case the parties should· elect to sell the land and buildings, that she would pay Koch one-half of the net price received on such sale," and as the contract stated, " it being the intent of the parties to equally divide any profits which may be realized by the sale of said buildings." The performance of the agreement by Spaulding was secured by a mortgage on the property. The contract, as the court analyzed it, was that Koch should advance half of the necessary money, and that Spaulding should erect the houses and convey one to Koch, and that " all that is said in relation to a sale of the property or a division of the price received is conditional upon the further agreement of the parties," and so the relation of partners did not exist. Koch's statement, so interpreted, was to advance some money and have one house, without personal exposure to debt. Between the last two cases noticed and *Leggett* v. *Hyde* (*supra*) there are decisions on which the respondents rely. In *Curry* v. *Fowler* (87 N. Y. 33) two men named McCormack and Fowler made an agreement which showed that the McCormacks were the owners of land, whereon they were about to erect fifteen buildings, and Fowler agreed to advance $50,000 towards such building and was to have interest thereon and one-half of the profits on sale, which the McCormacks guaranteed at at least $12,500, and the advances and guaranteed profits were secured by bond and mortgage on the land. It was decided that the agreement did not make Fowler liable to third persons as a partner upon the ground that Fowler merely made a loan relating to a building contract, and that the profits were a means of compensation. The lender had no title or ownership in the building, nor did he stipulate to bear any part of the debts, as in the case at bar. The court found authority in *Richardson* v. *Hughitt* (76 N. Y. 55), where Hughitt and B. Bros. & Co. agreed that the firm should make some wagons and deliver them to Hughitt, who agreed to advance $50 on each, and upon sale Hughitt was to receive one-quarter of the profits and his

advances with interest. The provision for profits was considered merely a mode of providing compensation for the use of money advanced. Hughitt was a mere factor advancing on the thing to be sold. The decision was like that in *Eager* v. *Crawford* (76 N. Y. 97), where C. advanced to G. money to purchase stock and fixtures for a business, and payment on demand was secured by a chattel mortgage on the property, and G. agreed to pay C. one-half of the net receipts of the business. C. was not liable as a partner, and the legal presumption was that the share of the receipts so to be paid was to be applied in payment of the loan. The case was distinguished from *Leggett* v. *Hyde* (*supra*) upon the ground that the money was loaned and was to be refunded absolutely without regard to the profits. In *Cassidy* v. *Hall* (97 N. Y. 159) the first parties made a contract with a company, which showed that they contemplated assuming control of it when, if ever, they should be satisfied that its business was profitable, and that it was expedient to make an arrangement to determine that question, and thereupon the first parties, to enable the company to fill orders for goods made by it, agreed to make advances upon the assignment of such orders as they should approve, to collect on the orders, and from the proceeds retain the advance with interest and a proportion of the profits, not less than ten per cent of the face of the orders. The company gave the first parties a chattel mortgage upon its property to secure the advance. The first parties were not liable as partners to third persons for goods sold the company. I notice finally *Mason* v. *Partridge* (66 N. Y. 633), where Partridge and Whitney entered into an agreement by which Partridge should furnish to Whitney $2,000 to be used in a business which Whitney was to conduct, paying cash only, and Partridge not to be liable beyond $2,000, and each to have one-half of the profits. It was decided that Partridge was a partner as to third persons lending Whitney credit, with knowledge of the limitation, disregarded to Partridge's knowledge. With such survey of the decision, it is easily perceived that profits promised a stranger to a business for the use of money loaned to be used in it, would not make him a partner; but where he and others conclude articles and in them say that they form a partnership, and each contribute

land for the site of buildings to be erected, and each agrees to pay a share of the expenses, debts and obligations, and to receive an equal part of the proceeds and income, and two are in words authorized to represent and to act for the third, the mere fact that, if the undertaking does not escape its hazards, one partner may collect to a fixed sum his contribution, should not prevail. The transfer of all the real estate proximate the bankruptcy, the suppression of the partnership agreement, and the testimony given by Rosendorf and others to conceal and to deny the partnership, are evidences of fraud; but as there must be a reconsideration of the case in view of the present conclusion that there was a partnership, the questions in issue can be decided more justly on a new trial.

The judgment is reversed and a new trial granted, costs to abide the final award of costs.

JENKS, P. J., MILLS, RICH and PUTNAM, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.