### HESS v. COUZINIE.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

No. 118.

1. **Appeal and error** ⊛893(1)—**Where equitable defense is pleaded in action at law, suit is tried by consent as in equity it may be so reviewed.**

In an action at law where the answer pleads an equitable defense as by Act March 3, 1915, permitted by Jud. Code, § 274b as amended (Comp. St. § 1251b) and by consent of the parties the case is tried as an equity suit it may be so reviewed on appeal by either party.

2. **Evidence** ⊛397(1)—**Transactions between parties controlled by existing written contract in absence of satisfactory evidence of new agreement.**

Where there is a written contract intended to govern business transactions between the parties that contract must control unless there is satisfactory evidence that a particular transaction is taken out of the contract by a new agreement.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Morris Hess, doing business as Morris Hess & Co. against Leon Couzinie. From the decree both parties appeal. Affirmed.

The parties entered into an agreement as follows:

"It is agreed between Mr. Leon Couzinie, Buenos Ayres, and Messrs. Morris Hess & Co., New York, that Morris Hess & Co. are the sole agents for the U. S. A. and Canada, and also Germany and the Scandinavian countries, to sell all kinds of merchandise mentioned herein for Mr. Leon Couzinie, and he agrees to pay Morris Hess & Co. commission for all sales to the countries mentioned.

"Hair 4%, tankage 2%, blood 2%, furs 5%, feathers ½ profit, dry hides 1%, dry kips 2%, nonatos 2%, wet salted hides 1%, tallow 2%, pickled sheep ½ profit, goatskins 1%, horsehides 2%, sheepskins ½ profit.

"Mr. Leon Couzinie agrees to pay commissions as above stated to Morris Hess & Co., unless it is stipulated otherwise and agreed upon.

"It is further agreed between both parties any goods ordered by Morris Hess & Co. must be shipped by Mr. Leon Couzinie at actual cost c. i. f., and

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

profit and loss to be equally divided. Should Mr. Leon Couzinie ship any goods to Morris Hess & Co. without being ordered, Mr. Leon Couzinie must stand the losses alone, if any. This contract holds good for two years from date, and if by the end of two years no notice by either party is given, this contract still holds good for another year. Morris Hess & Co.

"L. Couzinie."

Plaintiff began an action at law in the New York Supreme Court, and the case was thereafter removed to the District Court for the Southern District of New York. The complaint after setting forth certain details and transactions, alleged that there was due and owing to plaintiff from defendant the sum of $16,649.85, with interest, and plaintiff demanded judgment for this principal sum, with interest.

Defendant interposed an answer. in which he denied various allegations of the complaint, and then "as a separate and distinct defense and by way of counterclaim" made certain allegations, among which was the allegation that defendant had no adequate remedy at law, and defendant demanded judgment dismissing the complaint, and adjudging that plaintiff account to defendant for all merchandise and funds which came into plaintiff's possession. Plaintiff did not file a replication to this answer, and thereupon defendant took a decree pro confesso, and in that decree it was ordered that the cause be referred to a special master to take and state the account between the parties.

While the hearings were proceeding before the master, plaintiff moved to open his default for failure to serve a reply to defendant's answer. and for such other relief as might be proper. Defendant opposed this motion, but consented that the decree pro confesso be amended, by adding thereto a provision that the master's report to the court include the claim sued on by plaintiff. and that, if a balance were found due plaintiff, instead of defendant, plaintiff should have judgment accordingly. The court denied the motion to open the default, but allowed the amendment supra to which the parties had consented. The case then was heard before the special master as an accounting in equity, and the special master made a draft report, then heard exceptions, and finally recommended and reported that the balance due plaintiff was $4,342.51.

Plaintiff and defendant each took exceptions to the master's report, and the District Judge, after having sustained certain exceptions, entered a decree in favor of defendant for the sum of $624.35. From this decree both parties appeal.

Louis Halle, of New York City (J. M. Poss, of New York City, of counsel), for plaintiff.

Evarts, Choate, Sherman & Leon, of New York City (Maurice Leon and John B. Butler, Jr., both of New York City, of counsel), for defendant.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] Under section 274 (b) of the Judicial Code, as amended by Act of March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. § 1251b), it is provided:

"That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject-matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require."

Defendant was entitled to set up a counterclaim in equity. This Statute has recently been considered in Liberty Oil Co. v. London National Bank 260 U. S. 235, 43 Sup. Ct. 118, 67 L. Ed. 232.

Plaintiff in the case at bar did not insist upon a jury trial, but accepted the condition imposed by the order of the court when the court amended the decree pro confesso. In such circumstances, the cause was properly tried as a cause in equity. We indicated in Ransome Concrete Machinery Co. v. Moody (C. C. A.) 282 Fed. 29, that, where the parties agreed in circumstances somewhat similar to these, we would take the record as shaped below and the opinion of Mr. Chief Justice Taft in Liberty Oil Co. v. Condon National Bank, supra, indicates the trend toward a liberal construction of this statute.

We shall therefore consider the cause below as one in equity, which on review calls for a consideration of the facts. Of the many transactions inquired into and dealt with by the special master and the District Court, only two need comment.

[2] 1. *The Quebracho Transaction.* Quebracho is a wood extract for tanning. It will be noted in the agreement between the parties, quoted supra, that the defendant was obligated to pay commissions to plaintiff upon sales of specified articles. The second part of the agreement related to "any goods ordered by" plaintiff. In respect of such transactions as would be covered by this second part of the agreement, profit and loss were to be equally divided between the parties. There was a loss of $7,769.02 on a transaction in quebracho, and this loss was charged by the special master against defendant. The District Judge was of opinion that this loss in quebracho was covered by the second part of the agreement, and therefore he divided the loss between the parties.

It is now argued by defendant that the loss should be entirely borne by plaintiff, while plaintiff seeks to have the loss entirely charged against defendant. Before the master defendant's counsel took the position that the loss should be equally divided, stating:

"We charge Mr. Hess with 50 per cent. of the loss upon the quebracho transaction. * * *"

But, after the hearings were closed, defendant's counsel, in his brief, insisted that the whole loss should fall upon plaintiff. This contention of defendant is based upon the proposition that plaintiff ordered these goods as an independent matter on his own account. Plaintiff throughout has argued that in this transaction he acted as a broker, and for that reason that the entire loss should be borne by defendant. The special master took the view advanced by plaintiff, and apparently was much influenced in that respect by certain testimony infra given by defendant.

Defendant is a merchant of Buenos Ayres, who was here during a part of the time when the hearings were being held before the master. At the outset of his examination he stated that he did not understand English very well, and asked whether his testimony could be given in French; but his counsel thought that he could get along in English, and the examination proceeded in English, and defendant made some

answers to questions referred to infra which led the master to conclude that plaintiff had acted as a broker in this quebracho transaction. We have examined, not only the testimony on the point set forth in the printed record, but also the original invoices and correspondence stipulated to be handed to the court as part of the record. Defendant testified that in July, 1916, he received an order from plaintiff for 100 tons of quebracho; that a few days later defendant asked what the destination was, and plaintiff gave him Copenhagen; that plaintiff cabled that he would have a credit of $25,000 opened, but that he never opened the credit. On receipt of the order, defendant bought 100 tons of quebracho and shipped 50 tons, invoicing the shipment at plaintiff's request at 8 cents per pound, although the cost was over 10 cents per pound. Previous to that defendant had shipped 20 bags to plaintiff, which were never paid for. Defendant sold the rest of the quebracho in Buenos Ayres, and plaintiff never opened a credit for this additional amount which was sold in Buenos Ayres. The credit for 50 tons was opened through G. Moors of Boston, and defendant never had any word from the Copenhagen concern. Plaintiff, on the other hand, testified that he did not order the goods shipped to Copenhagen; that he acted as broker for defendant, and that one Edward H. Bill of Boston, who, at the time the testimony was taken, plaintiff stated was the representative of defendant, had done the entire transaction; and that he, the plaintiff, was the innocent party and a mere dummy in the transaction.

An examination of the invoices and correspondence leaves the whole matter in doubt, and the expressions in the invoices argued by each side to be in its favor do not carry conviction as to the contention of either party. On cross-examination, defendant was asked whether plaintiff had acted as his broker in obtaining the Copenhagen customer, and he answered, "Yes;" but shortly thereafter he was asked whether plaintiff acted as a broker in regard to the 50 tons, and he answered, "No; he sent credit for that." He further testified that the 50 tons were shipped to plaintiff, but not on joint account, and then he stated, "He sent me credit, asking me to consign the goods." Upon being asked whether plaintiff got the goods as broker, defendant answered, "I don't know." Finally, defendant's attorney objected on the ground that "counsel has all the time been trying to put in the mouth of the witness that Mr. Hess has acted as broker; the witness has said he didn't know in what capacity," and thereupon counsel for plaintiff dropped that line of cross-examination.

Bearing in mind the imperfect knowledge of English of defendant, and taking all the testimony together, it is apparent that defendant did not intend to say that plaintiff was a broker in these transactions. On the other hand, defendant has by no means established that plaintiff bought this merchandise on his own account under circumstances where the parties understood that this was an independent transaction of plaintiff. In such circumstances, the District Judge resorted to the agreement, and held that, under the second part of the agreement, the parties were each chargeable with one-half of the loss.

We think the District Judge was right. Where there is a written agreement between parties, that agreement must control, unless the parties make a new and independent agreement, outside of the written agreement, which was intended to define their relations. This conclusion of the District Judge is attacked by plaintiff on the ground that he thereby sought to make an agreement for the parties, which they themselves did not make. The District Judge stated:

"But I can find no reason why the final clause of the contract should not be applied, with the result that the loss would be shared, except the opinion of the parties that it relates only to goods consigned to Hess for sale."

We think the District Judge was in error in supposing that the parties held the opinion that the agreement in this regard related only to goods consigned to Hess for sale. Defendant seems to have had that opinion, but we have been unable to find any such opinion expressed by plaintiff, and hence no practical construction of that part of the contract; and, of course, defendant's opinion, after the agreement was signed, as to what the agreement meant, cannot be considered in construing the rights which appear entirely clear upon the face of the agreement.

We see no difficulty in construing the agreement. It is plainly contemplated between the parties that in addition to the specific merchandise therein mentioned, in regard to which defendant was to pay commissions to plaintiff, there would likely be other merchandise which plaintiff would order, and which was to be shipped by defendant at actual cost c. i. f., and that in respect of such transactions the parties were to share equally the profits and losses. When, therefore, neither party has satisfactorily established that a transaction by new agreement was taken out of the terms of an existing written agreement, we must find the solution of their relations and obligations in the written agreement. In this respect, therefore, we agree with the conclusion of the District Court.

2. *Sheepskins.* The testimony showed that there were various transactions in sheepskins under the first part of the agreement. In all of these transactions, plaintiff acted as defendant's factor or agent, as contemplated in the first part of the agreement and plaintiff was entitled to the compensation there set forth, to wit, "½ profit." On some of these sales defendant made a profit, while on others he sustained a loss. The master, after examining the correspondence concerning the transactions in regard to sheepskins, held that "½ profit" meant that the compensation plaintiff was to receive was on the continuing transactions, and did not oblige the defendant to separate gains and losses on each sale. If there had been a loss on the whole sheepskins business, then the question would have been whether plaintiff was obligated to share the loss. Leggett v. Hyde, 58 N. Y. 272, 17 Am. Rep. 244. That question does not arise, because there was a net profit on all the transactions; i. e., taking into consideration those in which there was a profit and those in which there was a loss.

The question here under consideration is whether the parties intended that "½ profit" referred only to those sales of sheepskins where there was profit, or whether they intended that all of the sales of sheepskins

should be considered, and, in arriving at a profit, the loss on sales should be deducted from the profits on sales. This question has been settled by the parties themselves by their practical construction of the contract on this point. It is plain, from the correspondence and from the use of words, such as "participation" and "liquidation," that the parties themselves considered that this provision of the contract was as held by the special master and the District Court. It is unnecessary to recite in detail the correspondence and transactions relating to this matter of sheepskins, because these details have been carefully and comprehensively dealt with in the opinions of both the District Court and the special master.

As we are of opinion that the remaining conclusions assigned as error were rightly disposed of below, we think further discussion unnecessary.

Decree affirmed, without costs.